THE TEXAS-EMPIRE PIPE LINE COMPANY, a Corporation, Appellant, v. JOHN A. STEWART and CLARA M. STEWART, his wife, and BOONE COUNTY.—55 S. W. (2d) 283.

Court en Banc, November 3, 1932.

526

*Fry & Hollingsworth* and *W. B. Whitlow* for appellant.

528

*Clark, Boggs, Cave & Peterson* for respondents.

GANTT, P. J.—Condemnation of land for public use. In due course a jury fixed the compensation at $1900. The Kansas City Court of Appeals affirmed the judgment (Texas Empire Pipe Line Co. v. Stewart, 35 S. W. (2d) 627), and transferred the case to this

court. Its decision was deemed contrary to the decision of the St. Louis Court of Appeals in Missouri Power & Light Co. v. Creed, 32 S. W. (2d) 783. For statement of all the facts, refer to the opinion of the Kansas City Court of Appeals.

Plaintiff condemned a right-of-way for its underground pipe line across defendant's 320-acre farm. It appropriated land forty feet wide and across the farm for use during the construction of the line and permanently appropriated land eight feet wide and across the farm for use in making inspections and repairs. The pipe is under the center line of said permanent right-of-way.

The court ruled that the measure of damages to the farm as a whole was the difference, if any, between the market value of the farm before and after appropriation of the permanent right-of-way. This ruling is challenged.

Plaintiff contends that damage to the part of a farm not taken, to be recoverable, must be either a direct physical injury to said part, or physical disturbance of, obstruction to, or interference with a right of property which the owner enjoys in connection with the use of the farm. It states that the provision in our Constitution that "private property shall not be taken or damaged for public use without just compensation," was taken from the Constitution of Illinois, and with it we adopted the construction of said provision by the Supreme Court of that state. It cites Stone v. Railroad, 68 Ill. 394; Chicago & P. Railroad Co. v. Francis. 70 Ill. 239; City of Elgin v. Eaton, 83 Ill. 535; Rigney v. City, 102 Ill. 64, as construing said provision before the adoption of our Constitution. In those cases no land was taken and the right to compensation turned on a construction of the words "or damaged."

Plaintiff also cites recent decisions of the Supreme Court of Illinois wherein parts of farms were taken, and the court limited recovery to direct physical injury to the part not taken, or physical disturbance of, obstruction to, or interference with a right of property which the owner enjoyed in connection with the use of the farm. In effect, recovery was limited to independent items of actual damage. [Illinois Power & Light Corp. v. Peterson, 153 N. E. 577; Illinois Power & Light Corp. v. Talbott, 152 N. E. 486; Illinois Power & Light Corp. v. Cooper, 152 N. E. 491; Rockford Elec. Co. v. Browman, 171 N. E. 181.] In these recent Illinois decisions the right to compensation for damages to the farm as a whole also turned on a construction of the words "or damaged."

In the instant case land was taken and the right to compensation for damages to the farm as a whole did not turn, under the decisions of this court, on a construction of said words. From the beginning this court ruled that if private property is damaged by

a public use in connection with an actual taking, the property as a whole is effectually "taken" within the meaning of the provision that "private property shall not be taken for public use without just compensation." The addition of the words "or damaged" did not change the measure of damages in such cases. [St. Louis v. Railroad, 272 Mo. 80, l. c. 93-94, 197 S. W. 107; Quincy, M. & P. Railroad Co. v. Ridge, 57 Mo. 509; Hannibal Bridge Co. v. Schaubacher, 57 Mo. 582; Lee v. Railroad, 53 Mo. 178; Pacific Railroad v. Chrystal, 25 Mo. 544.] It follows that the Illinois cases may be put aside. In this connection it should be stated that the record in this case does not call for the consideration of damages, if any, resulting from street grading, special and peculiar damage not common to the neighborhood, loss of commercial profit, independent items of actual damages, or the location of jails, hospitals and schools. It also follows that such cases may be put aside.

The rule is firmly established in this State that if part of a farm is taken in a condemnation proceeding, the measure of damages to the farm as a whole is the difference, if any, between the market value of the farm before and after the appropriation of said part. The weight of authority sustains this rule. It is said by a standard text that proof of value and damages in condemnation proceedings " . . . are not susceptible of precise proof and can only be approximately shown by the opinions of witnesses having the requisite information. If the true value of an estate immediately before and immediately after the location of a road over it could be accurately ascertained such a discovery would afford the most exact means of determining the real pecuniary damage sustained by its owner. The market value is a near, and perhaps the closest, approximation to it; and, therefore, any evidence which is competent in its general character to prove that, is apposite and admissible. In the very nature of things there can be no absolute standard by which the value of land or interests therein can be measured; and, of course, when it cannot be tested by the fact of a recent sale the nearest approach to it which can be obtained is a knowledge of the opinion and judgment of intelligent, practical men who are acquainted with the property. Evidence of such opinion and judgment must of necessity often be all that can be resorted to, and it is always competent and admissible, leaving its weight in each particular case to be determined by the jury in connection with the circumstances under which it is offered. . . . Upon cross-examination, however, the knowledge of witnesses, and, therefore, the value of their opinions, may be tested in that mode if desired by the party in whose interest the examination is conducted." [4 Sutherland Damages (4 Ed.) pp. 4130, 4134.]

The difference, if any, in the market value before and after the appropriation furnishes a reliable standard for the determination of the compensation due the owner of land taken in condemnation proceedings. The contention is overruled.

On the trial plaintiff voluntarily assumed the burden and called witnesses, who gave opinions that the market value of the farm as a whole was the same after as before the appropriation of the right-of-way.

Defendant then called witnesses, who gave opinions that the market value of the farm as a whole before the appropriation of the right-of-way was $75 per acre, and after said appropriation was from $60 to $65 per acre.

On cross-examination each of defendant's witnesses gave opinions on the causes of depreciation occasioned by the right-of-way, but could not fix the amount of depreciation occasioned by each cause. At the close of the cross-examination plaintiff moved the court to strike out all of the testimony of these witnesses. It was claimed that many of the stated causes of depreciation were so remote and speculative as to be incapable of ascertainment by the jury. It was further claimed that because the witnesses could not separately value the stated causes of depreciation, the competent and incompetent evidence was commingled and rendered all of the testimony of the witnesses of no value. The court overruled the objection.

The objection assumed that the stated causes of depreciation were in evidence as independent items of actual damages and that defendants were seeking compensation for such damages. The record does not sustain the assumption. On the contrary defendants were seeking compensation for depreciation of the market value of the farm as a whole. The cross-examination disclosed that the opinions of the witnesses on depreciation rested in some measure on remote and speculative damages (so-called). This did not destroy the testimony of the witnesses, but tended to discredit the opinions on depreciation and was for the consideration of the jury in determining the weight to be given the testimony. The trial court entertained this view, and at the request of plaintiff instructed the jury as follows:

"You are further instructed that you are not permitted to surmise or guess as to damages to any of the 320 acre tract not included within the eight foot strip over which the pipe line is to extend, but such damages, if any, must be proven to you to your reasonable satisfaction by a preponderance of all the competent evidence in the case in the same manner as any other fact in the case; and, unless such damages have been so proven to your reasonable satisfaction, you will find none in that respect."

On consideration of the evidence on the question of depreciation and the instruction given by the court, the jury allowed less than $6 per acre as compensation for temporary use of the forty-foot strip, diminution in value of the eight-foot strip, and depreciation in the market value of the farm as a whole. Thus it appears that the jury discounted the opinions of defendants' witnesses on depreciation. It may be that it did so because of the remote and speculative causes given by the witnesses as a reason for depreciation. The court ruled correctly in overruling the motion to strike out the testimony of these witnesses.

The ruling of the court on a construction of the petition is challenged. Defendants contended that under the petition the easement authorized plaintiff to use any part of the farm as a way of ingress to and egress from the eight-foot strip. Plaintiff contended that the petition limited said way to the ends of the strip. The court ruled that the easement included a right-of-way over any part of the farm to and from the strip and directed the witnesses to consider same in estimating the depreciation of the market value of the farm. Of course, the petition should have been so written that the question could not have been in the case. But it was not so written, and the question is here for determination on a construction of parts of the petition, which follow:

1. "Plaintiff . . . seeks by this action to appropriate and condemn over and across the lands hereinafter described, situated in this County, an easement or right-of-way for said pipe line, which is to say, the right to lay, operate and maintain such pipe line upon, over, and through said land, together with the right of ingress to and egress from said pipe line for such purposes; . . . that the center line of the route of said pipe line has been located and surveyed and stakes set to show the said route and survey."

2. "That for and during the construction of said pipe line plaintiff will use the surface of a strip of ground twenty (20) feet wide on each side of the above described center line making a strip of the total width of forty (40) feet, which said forty foot strip of ground will be used only during construction of said pipe line for the purpose of hauling materials, digging ditch and laying said twelve inch pipe, and for that purpose only, the surface of said strip will be used."

3. "Plaintiff covenants that after the construction of said pipe line, the plaintiff will not occupy the surface of said land, will not erect any structure upon or over said surface and will not enter upon said land except for the purpose of inspection of said pipe line and of making necessary repairs."

4. "That after said pipe is laid in the ground and said pipe line

is constructed along the line above described, plaintiff will then use only that part of said real estate along the above described line for the purpose of inspection and repair of said pipe line, not to exceed eight feet in width and will not use the surface of said forty foot strip of ground after the construction of said pipe line.''

It may be conceded that paragraph one does not limit the right of ingress and egress to any part of the farm. But other parts of the petition specifically limit such right. It is provided in paragraph two that during construction a forty-foot strip may be used for hauling materials, digging ditches and laying pipe. This limits the right of ingress and egress to the farm to the forty-foot strip during construction. Of course, construction includes operation and maintenance for the purpose of testing the pipe line. The purpose of ingress after construction is limited in paragraph three to inspection and repair. The land to be used for that purpose after construction is limited in paragraph four to a strip eight feet wide across the farm. As the only purpose of ingress and egress after construction is to inspect and repair, and the land to be used for that purpose is limited to the eight-foot strip, it follows that plaintiff would not be authorized to use the farm as a whole for ingress to and egress from the eight-foot strip. The petition was misconstrued and the error was prejudicial.

Other assignments of error may be eliminated on a retrial.

The judgment should be reversed and the cause remanded. It is so ordered. All concur.

The divisional opinion of GANTT, J., is adopted as the opinion of the court en banc, all of the judges concurring.