**KAMO ELECTRIC CO–OPERATIVE, a Corporation, Appellant,**

**v.**

**Clarence S. BAKER and Alice Baker, Respondents.**

**No. 7270.**

Springfield Court of Appeals.

Missouri.

Dec. 16, 1954.

Jack L. Rorschach, Vinita, Sam Appleby, Ozark, Charles E. Ginn, Aurora, for appellant.

Andrew Howard, Billings, Bill Davenport, Ozark, for respondents.

ALLISON, Special Judge.

This is an appeal from a judgment of the Circuit Court of Christian County in a condemnation proceeding brought by Kamo Electric Co-operative, a corporation, to acquire an easement over and across the lands of the defendants for the purpose of constructing, maintaining and operating its electric transmission lines. The parties will be referred to herein as plaintiff and defendants.

The defendants' farm, across which the easement extends, lies in an "L" shape composed of four contiguous tracts; two adjacent 40's lying east and west, a 16-acre tract adjoining the east line of the east 40, and a 40-acre tract adjoining the north line of the west 40. The farm is owned, occupied and operated, chiefly as a dairy farm, by defendants, Clarence S. Baker and Alice Baker, husband and wife. It is improved with, among other things, a modern dwelling house, Grade "A" dairy barn, combined milk barn and milk house built adjoining the main barn, a rock building used for storing feed, two older barns, a tenant house, poultry house and brooder house. The farm is fenced and cross-fenced, mostly with woven wire but some barb wire.

The condemned easement, 100 feet wide, extends diagonally across each of the three 40's and the 16-acre tract from southeast to northwest, a distance of 3,525 feet. The transmission line is made up of aluminum stranded conductors attached to cross-arms on single wood poles. The poles range in height from 45 feet to 90 feet, with an average of about 55 feet and are spaced approximately 500 feet apart, with the conductors or transmission lines attached to the poles approximately 35 feet from the ground. The line is so designed that there will always be a clearance of the conduc-

tors above ground of approximately 21 feet when loaded under ice conditions. The line is designed to carry 69,000 volts of electric energy and is protected with oil circuit breakers, which in event of a fault on the line, will automatically open the line and de-energize it at both ends of a faulty section in about one-sixth of a second. There are 7 poles set on the easement right-of-way across defendants' farm and the transmission lines across this farm cross 8 fences.

By the petition, plaintiff sought to take, acquire, hold, use and enjoy a perpetual easement over the real estate for the construction, maintenance and operation of its electric transmission lines, and to construct necessary gates to permit ingress and egress to such lines; to cut and trim trees and to remove any obstructions that may interfere with the construction, operation or maintenance of the electric lines within the hundred-foot right-of-way, and the perpetual right to cut down or remove any trees or growth and to remove any structures within 50 feet on either side of said lines as may endanger the same by fire, storm or otherwise, or that may cause the same to become dangerous in any way to life or property.

In its petition, plaintiff covenanted that the hundred-foot right-of-way will not be fenced or enclosed, except necessary gates through fences now or hereafter constructed sufficient to permit ingress and egress; that no uses will be made of the right-of-way except for the erection of said electric lines and the operation and maintenance thereof; that the use of the land covered by the easement will not be obstructed or interfered with, except, insofar as this may be done by construction, maintenance and operation of the electric lines and by patrolling said lines by plaintiff's employees; that if it should be necessary to remove any fences in connection with the construction, maintenance and operation of said lines, plaintiff will replace same in as good a condition as they were before removal.

In addition to the conditions and covenants set out in its petition, before the trial of the case in circuit court, plaintiff further stipulated as follows:

(1) That the transmission line is to consist of a single wood pole construction, with cross-arms on the same, with insulators and three electric energy carrying wires and shield wires suspended thereon;

(2) That only one line of any kind shall be constructed across the premises as a result of any rights granted to the plaintiff, and that this one line shall be of the type described in No. 1 above;

(3) That there will be no substation or any other installation on the premises except that required for the transmission line.

Following the filing of plaintiff's petition, three commissioners were appointed to assess the damages, and thereafter the commissioners filed their report awarding defendants the sum of $240. The defendants filed their exceptions to the report and asked for a new appraisement and assessment of damages by a jury, which request the court granted, and a trial was had before a jury beginning on September 11, 1953, resulting in a verdict for the defendants in the sum of $1,200. From the judgment rendered thereon, plaintiff, after the overruling of its motion for a new trial, was granted an appeal to this court.

For reversal of the judgment below, plaintiff complains:

(1) That the award is based on elements of damage which were remote and speculative and inadmissible in evidence.

(2) That the court erred in striking out the testimony of plaintiff's witnesses Short and Wade as to their evaluation of the premises before and after the condemnation.

(3) Of the giving of instructions numbered 3 and 5 at the request of the defendants.

(4) Of inflammatory and prejudicial argument to the jury by counsel for defendants.

(5) That the verdict is so excessive as to indicate bias and prejudice on the part of the jury against the plaintiff.

The defendant landowners, on whose exceptions to the award of the commissioners the case was tried, assumed the burden of going forward and proving their damages. Evidence was offered and the case properly tried on the theory that the measure of damages to the farm as a whole was the difference, if any, between the fair market value of the farm before and after the appropriation of the permanent easement. Texas-Empire Pipe Line Co. v. Stewart, 331 Mo. 525, 55 S.W.2d 283, loc. cit. 284; State ex rel. Kansas City Power & Light Co. v. Gauld, 360 Mo. 795, 230 S.W.2d 850, loc. cit. 851. On that basis, the witnesses for the defendants after testifying that they were familiar with the Baker farm, variously estimated the damages resulting from the condemnation at from $1,800 to $2,650. On the same basis, the plaintiff's witnesses variously estimated the damages at from $240 to $600. On cross-examination of the witnesses for defendants, counsel for plaintiff questioned them with considerable particularity as to the elements each witness considered in arriving at the amount of damages severally testified to. And in the course of the rather searching cross-examination, some elements of speculation developed in the testimony, such as the possibility that fences would be torn down or gates left open and livestock thereby escape from the farm, but in each instance timely objection by counsel for plaintiff was interposed with request that the objectionable elements be stricken out and those objections to elements that were speculative, remote or that might happen in the future were sustained, speculative elements ordered stricken out and the jury instructed not to consider them in arriving at their verdict.

The trial, especially on cross-examination of defendants' witnesses, was frequently punctuated by objections on the part of counsel for plaintiff, and motions to declare a mistrial and to discharge the jury were repeatedly made, and again and again throughout the trial, and particularly during the cross-examination of the defendants' witnesses, the trial judge admonished that the jury should consider no evidence or elements of damages that were remote or speculative, such as unsightliness of the transmission lines across the farm, the possibility of fences being torn down or gates being left open or livestock escaping from the farm, and those admonitions of the court from time to time throughout the trial appear to have kept the jury well informed as to the elements of damages to be considered in making up their verdict.

We hold that the testimony of the various witnesses admitted in evidence and allowed to stand before the jury was competent and admissible and that the weight and value thereof was for the determination of the jury. Furthermore, in the instructions given to the jury, the issues and elements to be considered by the jury in making up their verdict, under the law, were clearly stated. The finding of the jury is amply supported by substantial, competent evidence and an appellate court will not disturb a judgment for damages so supported. Texas-Empire Pipe Line Co. v. Stewart, 331 Mo. 525, 55 S.W.2d 283; Missouri Power & Light Co. v. Creed, Mo. App., 32 S.W.2d 783; Prairie Pipe Line Co. v. Shipp, 305 Mo. 63, 267 S.W. 647.

Plaintiff complains of Instructions numbered 3 and 5 given at the request of defendants. The complaint as to Instruction No. 3 is that it permits a double recovery because of the use of the phrase "compensation and damages". The instruction told the jury "that in assessing the just compensation and damages to be paid, you should allow the defendants the difference between the fair market value of defendants' whole farm before and its fair market value after the appropriation by plaintiff of the strip of land mentioned in evidence, considering the uses to which the condemned land is to be applied". It seems clear, without citation of authority, the complaint that the use of the phrase "compensation and damages" in the above

instruction would permit a double recovery, is without merit. In the sense the words "compensation" and "damages" were used in the instruction in this case, double recovery could hardly be interpreted. We think that phrase in the instruction could only be interpreted to refer to the amount of payment or recovery for the injuries, if any, found to have been sustained by the landowners under the admissible evidence and the instructions of the court, and did not mislead the jury to misinterpret this phrase to mean double recovery.

█ Instruction No. 5, given at the request of defendants, told the jury "that the defendants have not collected and cannot collect from the plaintiff any sum of money as damages for the appropriation and use of their land other than what you may award in your verdict, unless negligence is shown on the part of the plaintiff in its use of its right-of-way for the construction, operation, maintenance and patrolling of its electric transmission lines".

This instruction is not subject to the criticism properly levelled at an instruction given in the case of Missouri Power & Light Co. v. Creed, Mo.App., 32 S.W.2d 783, loc. cit. 788, because Instruction No. 5 in the present case carries the qualifying clause "unless negligence is shown on the part of the plaintiff in its use of its right-of-way for the construction, operation, maintenance and patrolling of its electric transmission lines".

These instructions together with the instructions given at the request of the plaintiff seem to fairly and clearly submit the issues under the facts and that point is ruled against the plaintiff.

Next, plaintiff complains that closing argument of counsel for defendants was inflammatory. A thorough reading of the closing argument discloses that objections to certain portions of the closing argument of counsel for defendants were made, some of which were sustained by the court and the jury properly admonished to disregard such portion of the argument. However, the court did refuse the request of counsel for plaintiff to declare a mistrial and discharge the jury because of counsel's closing argument, which ruling we hold to have been proper exercise of the trial court's discretion under the circumstances.

█ Final complaint by plaintiff on this appeal is that the verdict is so excessive as to indicate bias and prejudice on the part of the jury. Having already decided that the evidence on the question of damages was properly ruled by the trial court, and taking into account that the value of the defendants' entire farm before the condemnation ranged from $20,400 as the minimum testified to by a witness for plaintiff to $27,600 as a maximum testified to by a witness for defendants, and that the damages to the entire farm resulting from the condemnation ranged from $240 as the minimum testified to by a witness for plaintiff to $2,650 as the maximum testified to by a witness for defendants, the amount found by the jury, in the sum of $1,200 could not be held to indicate bias or prejudice against the plaintiff merely by the amount thereof, and the plaintiff has pointted to no other reason for this assignment. That point is likewise ruled against the plaintiff.

Believing from the entire record that the case was fairly tried and finding no reversible error, the judgment should be affirmed.

It is so ordered.

McDOWELL, P. J., concurs.

STONE, J., not sitting.