**STATE of Missouri ex rel., N. W. ELECTRIC POWER COOPERATIVE, INC., a Corporation, Appellant,**

v.

**Harry K. WAGGONER et al., Exceptions of Albert A. Rall and Roberta F. Rall, Respondents.**

No. 22841.

Kansas City Court of Appeals.
Missouri.
Jan. 12, 1959.

Rufus Burrus, Independence, (Burrus &
Burrus, Independence), Russell N. Pickett,
Eugene E. Andereck, Phil Hauck, Pickett,
Andereck & Hauck, Trenton, for appellant.

Barkley M. Brock, Poague, Poague & Brock, Clinton, for respondent.

HUNTER, Judge.

Appellant, N. W. Electric Power Co-operative, Inc., condemned a strip of land 100 feet wide and 1,237 feet long across the 64 acre tract of land of respondents, Albert A. Rall and Roberta F. Rall, located in Jackson County, Missouri, for a perpetual easement to construct an electric transmission line. The commissioners' report of damages and award was $400. Both sides filed exceptions, and trial thereon to a jury resulted. The only issue before the jury was the question of how much, if any, the reasonable market value of the tract had been reduced by the easement taken. The jury returned its verdict for respondents in the sum of $1,000. Appellant perfected this appeal.

The two contentions of error are (1) that the trial court failed to strike certain testimony of witnesses Coggswell and Rall which testimony appellant says is speculative and prejudicial; and (2) that the trial court permitted improper closing argument by respondents' counsel.

We proceed to develop and discuss such facts as are pertinent to an understanding of these contentions of error.

Albert Rall now in retirement because of ill health is an electrical engineer who had worked as Safety Director for the Kansas City Power and Light Company for 42 years. His experience included transmission and distribution work and the construction of high voltage transmission lines. In 1949 he and Mrs. Rall bought the 64 acre unimproved tract for $8,600 with definite plans for building a home on it. While they still lived in Independence, Missouri, they built a compartment garage, with temporary living quarters above, a cow barn, a tool shed and certain other improvements including a driveway from the garage to Hunter Road which ran along the north boundary of the tract. These improvements cost a total of $6,600.

In 1951, they sold their home in Independence and moved into the temporary quarters on the 64 acre tract. For the building site for their house they had selected the highest area on the tract, which area was located relatively near to the other improvements, and was just east of the driveway. Respondents' sewer system had a lateral from the garage toward and near the building site.

The easement in question ran directly across respondents' selected building site. Admittedly the transmission lines would be over the place selected by respondents as their house site.

Testimony on behalf of respondents was to the effect that their chosen building site because of the terrain was the best and only satisfactory building site on the entire 64 acre tract. It was also the best site because the other buildings and road on the tract had been arranged to be used in connection with that site. The damages to respondents' 64 acre tract resulting from the taking of the easement, according to respondents' only witness on the subject, John Coggswell, was $6,400.

Testimony on behalf of appellant was to the effect that there were other sites on the tract satisfactory for building a house and that the damage to the 64 acre tract resulting from taking the easement was only $400 or $500. The jury was properly instructed that the measure of damages to the tract as a whole is the difference, if any, between the market value of the 64 acre tract immediately before and after the appropriation of the easement. City of St. Louis v. Paramount Shoe Mfg. Co., 237 Mo.App. 200, 168 S.W.2d 149, 153. As stated, the jury returned its verdict for $1,000.

At the outset we wish to state briefly and generally certain fundamentals inherent in a condemnation proceeding such as this. We do so because it is evident from our review of the record of this case that from time to time during the trial both appellant and respondents overlooked them

or failed to recognize their applicability and abide thereby.

Eminent domain is the right or power to take private property for public use with the duty to pay just compensation for the property taken or the resultant damage. Const. of Mo. Art. I, Sec. 26, V.A.M.S. It may be exercised by private corporations to the extent and for the purposes authorized by law. Where the power and authority to take exists, as is admitted here, it is the general rule that, in the absence of legislative restriction, the condemnor may determine the location and route of the improvement and of the land or easement to be taken for it. Cf. State ex rel. Coffman v. Crain, Mo.App., 308 S.W.2d 451; 29 C.J.S. Eminent Domain § 91, p. 886. The landowner, in order to induce sympathy and thus to secure a more favorable verdict, cannot properly argue or object to the jury that the condemnor could have selected some other location or have taken some other property just as readily. See, State ex rel. State Highway Commission v. Goodson, 365 Mo. 260, 281 S.W.2d 858; Illinois I. & M. Ry. Co. v. Easterbrook, 211 Ill. 624, 71 N.E. 1116, 1118; 29 C.J.S. Eminent Domain § 91, pp. 886–887. Such a consideration has no proper part in the ascertainment of damages resulting from the taking. To argue to the jury or to emphasize to it that it is a *forceful* taking on the part of the condemnor and that condemnor could have avoided taking the particular tract of land or particular location of the course of the easement is not only improper but is prejudicial in that it is in effect an appeal to the jury to enhance the damage award to punish condemnor for the forceful taking and for its particular selection of the location of the improvements and of the land or easement taken.

On the other hand, the condemnor has the duty both of stating clearly in its pleadings exactly what is being taken and in the trial of refraining from misleading the jury by questions, testimony, argument or by other conduct indicating that something less than that being legally taken is in fact being taken. The owner of the property is entitled to just compensation for all that is taken and not for something less. State ex rel. State Highway Commission v. Johnson, Mo.Sup., 287 S.W.2d 835, 839; Shell Pipe Line Corp. v. Woolfolk, 331 Mo. 410, 53 S.W.2d 917, 918; Union Electric Co. v. Levin, Mo.App., 304 S.W.2d 478, 481.

Just compensation means full indemnity or remuneration for the loss or damage sustained by the owner of the property taken or injured. Where only a part of the property is condemned the owner is entitled to compensation not only for the part actually taken but for whatever consequential damages may proximately result to the remainder by reason of the taking of a part. Hamer v. State Highway Commission, Mo.Sup., 304 S.W.2d 869; City of St. Louis v. Paramount Shoe Mfg. Co., supra; State ex rel. State Highway Commission of Missouri v. Craighead, Mo.App., 65 S.W.2d 145. This includes damages resulting from any destruction, restriction, diminution, or interruption of the rights of ownership in and to the property. Texas-Empire Pipe Line Co. v. Stewart en Banc, 331 Mo. 525, 55 S.W.2d 283; Arkansas Missouri Power Co. v. Kilian, 225 Mo.App. 454, 40 S.W.2d 730.

Generally, any evidence which is competent to prove the market value of the tract of land before and after the appropriation of the easement, unless barred by some recognized rule of evidence, is pertinent and admissible. Texas-Empire Pipe Line Co. v. Stewart, supra. 29 C.J.S. Eminent Domain § 136, pp. 971–972; Missouri Power & Light Co. v. Creed, Mo.App., 32 S.W.2d 783. Testimony concerning market value that is purely speculative or based on surmise and conjecture is not admissible. Kamo Electric Cooperative v. Baker, 365 Mo. 814, 287 S.W.2d 858; Missouri Power & Light Co. v. John Hancock Mutual Life Insurance Co., Mo.

App., 58 S.W.2d 321; State ex rel. Kansas City Power & Light Co. v. Gauld, 360 Mo. 795, 230 S.W.2d 850; Missouri Power & Light Co. v. Creed, supra.

■ Turning from these general rules to the case before us, appellant was taking an easement of such terms and nature as to preclude the use by the owner of the property within the boundaries of the easement as a homesite. Appellant was under a duty not to mislead the jury to believe that the respondents, as owners of the property, had the right to use the land occupied by the easement as a homesite. Without detailing this action by appellant, consisting primarily of questions suggesting that respondents could use the easement occupied portion for a homesite, we mention its impropriety so that it will not occur on a retrial.

■ Appellant complains of testimony on behalf of respondents to the effect that the power line and poles are unsightly and lessened the market value of the tract taken for the easement by spoiling its view for homesite use.[1] It is unnecessary to consider this contention for two reasons. First, appellant's easement prevented the use of the mentioned portion as a homesite and the testimony thus was irrelevant. Second, the testimony could not have been prejudicial for the testimony was merely to the effect that the portion respondents had chosen was lessened in value, when in fact its value as a homesite was utterly destroyed because such use was prohibited by the terms of the easement taken.

■ Appellant next complains of the testimony of respondent Albert Rall that it was not safe to build house under the power line because (1) ice might cause the power line to break, (2) wind might cause it to break, (3) hunters might shoot at the insulators with "sling shots, air guns, or whatever." It is apparent that what might happen through the action of hunters who "might shoot at the insulators" is purely speculative and conjectural, and is not a proper factor for consideration by an expert witness in determining the decreased value of a tract of land that has been subjected to an easement for a power line. Cf. Missouri Power & Light Co. v. Creed, supra; State ex rel. Kansas City Power & Light Co. v. Gauld, supra. If a hunter did such a foolish and wrongful act there is an available remedy against the wrongdoer. In a condemnation case the inquiry as to damages sustained by reason of the taking does not include torts or other wrongful injury to the property that may be committed by someone in the future. The trial court should have sustained appellant's objection to this testimony. However, we need not consider nor rule on the effect of this testimony, nor pass on the question of whether it was prejudicial error to permit testimony that ice or wind[2] might break the power line creating high danger to a house located on the selected homesite or to its occupants, for, again, under the terms of the easement no house could be located anywhere along the easement taken and such evidence was irrelevant to the issue being tried.

Finally, we consider appellant's contention that the trial court allowed improper and prejudicial jury argument by permitting respondents' attorney to argue (1) that appellant could have turned the line, thus taking a different route and avoiding placing its power line over the selected homesite; (2) that appellant would have been required to pay more money to maintain the line if they had moved the line as defendants requested so as to avoid going

1. For those who may wish to pursue the subject, see Annotation, Eminent Domain, Power Lines, 124 A.L.R. 407, 413, 415; 5 Nichols on Eminent Domain, Section 16.103(1), pages 40–43, both noting a possible distinction in rule applying to ordinary *farm land* and land having other special uses or value where esthetic considerations are important.

2. See, Annotation, Eminent Domain—Power Lines, 124 A.L.R. 407, loc. cit. 413–415; 5 Nichols on Eminent Domain, Sec. 16.103(1), pp. 40–41.

over the selected homesite; and (3) that the line "could fry you like an egg".

We set out this portion of the argument:

"Mr. Brock: I submit that this company constructed this line on this place after they were told that it was the building site, that it was their most feasible building site, and that they did it because they would rather take their chances in court. I will tell you something else as a reason why they did it. They can turn the line * * *

"Mr. Burrus: (interrupting) I object to that because there is no evidence that they could turn the line. There has been no witness here, no testimony here whatsoever that they could turn the line.

"The Court: Overruled.

"Mr. Brock: The evidence was that they could turn this line but it would cost them money. There isn't a thing in the world that would have kept them from coming along the east side of this property, making an angle and missing the house across the road to the north except that it would cost them more money. They decided to do what they did, they decided to take their chances, they would go right through the center where it was the easiest and cheapest and most economical for them to build their line. It is cheaper for them to maintain that line when it is straight, but at whose detriment? To Mr. and Mrs. Ralls', and they are the people who suffer."

Earlier in the closing argument respondents' counsel stated:

"Mr. Burrus cross-examined Mr. Coggswell at length and he repeatedly asked him—'Did anybody ever tell you they can't build under the line? They were trying to give the impression that they could, weren't they?' When Mr. Martz took the stand, the general manager of this power cooperative, he said, 'We advise against it and we would not let them.' And that is the actual fact, nobody would build a home under it, and they wouldn't let anybody build under it. You just don't build a house under a 169 K.V. line that can fry you like an egg * * *."

Previously we stated the applicable rule. Where the power and authority to take exists, as is admitted here, and in the absence of legislative restriction, the condemnor may determine the location and route of the improvement and of the land or easement to be taken for it. Thus appellant had the legal right to locate its easement over and across that portion of respondents' tract where the selected homesite was located. Appellant's only resultant duty was to pay just compensation for that taking. Respondents had no right to complain to the jury that appellant could have selected another location for its easement which would not have gone over its selected homesite but that appellant with knowledge of respondents' selection refused to change its location of the easement. Respondents' argument was clearly improper and resulted in prejudicial error which materially affected the merits of this cause.

In the interest of justice this case should be retried, and properly, so that appellant shall pay and respondents shall receive the correctly determined damage to respondents resulting from the taking of the easement.

The judgment is reversed, and this cause is remanded for a new trial.

It is so ordered.

All concur.