STATE of Missouri ex rel. STATE HIGHWAY COMMISSION of Missouri, Appellant,

v.

VOLZ CONCRETE MATERIALS COMPANY, a Corporation, Respondent.

No. 47234.

Supreme Court of Missouri,

Division No. 1.

Jan. 11, 1960.

Robert L. Hyder, Bruce A. Ring, Jefferson City, for appellant.

C. Kenneth Thies, Kerth, Thies & Schreiber, Clayton, for respondent.

COIL, Commissioner.

In this condemnation case the State Highway Commission has appealed from a judgment entered on a jury verdict for $38,000 in favor of respondent, Volz Concrete Materials Company, a corporation. Appellant adduced substantial evidence tending to show that there had been a net increase in the value of respondent's property. Consequently, the amount in dispute exceeds $7,500.

Respondent was in the cement products business in St. Louis County and, prior to the highway construction here involved, its plant was adjacent to and on the north side of Page Avenue some distance west of Walton Road. Page, then a 20-foot concrete road, was also known as Route D and ran generally east and west. Entrance to Page from respondent's premises was at grade level and was accomplished by a

right or left turn. Route D as reconstructed (herein sometimes called "new Page") beginning at a point on old Page near the west line of respondent's property, curved southeast away from old Page, and at a place about even with the east line of (but south of) respondent's property new Page crossed railroad tracks by means of an overpass and extended on southeastwardly and then eastwardly to Walton Road. West of Walton for some distance old Page was made an outer service roadway whose eastern terminus connected with new Page at Walton and whose western terminus connected with new Page at a point eighty or ninety feet east of respondent's west property line. The surface of new Page was considerably higher than old Page as the overpass was high enough to permit railroad cars and other vehicles to travel thereunder. New Page was also connected with old Page by a ramp which led from the south side of new Page at a point just east of the overpass and continued downwardly and to the right circling under the overpass and extending north to old Page.

Respondent's plant entrance was near its east property line and its office building near its west property line. The property condemned consisted of a strip of land ten feet wide adjacent to old Page and beginning at respondent's west property line and extending eastwardly for 357.37 feet; a construction easement in a strip of land immediately north of the land just described extending the same 357.37 feet in length and for varying widths of from five to fifteen feet; and a triangular tract fronting about 45 feet on the south side of old Page (across from the plant) and extending on each its east and west sides about 80 feet There was reserved to respondent the use of a railroad spur which crossed that tract. The ground had been used by respondent not only for access to its plant by railroad but also to store and load aggregate materials sold by respondent.

After the construction, respondent's access to travel west on new Page was up a

12 per cent grade service road (old Page) and onto new Page at a point just east of respondent's office building. Respondent's access to travel east on new Page was to drive south out of the plant entrance, under the overpass, turn left and travel up the ramp leading into the south side of new Page, or turn left at the plant entrance onto old Page and proceed east to the place where new Page crossed Walton Road.

Respondent's evidence generally tended to show that the taking and the new construction had in effect put respondent's plant "down in a hole" with respect to new Page, had reduced or eliminated the parking space formerly in front of the office, had caused some damage because of former drainage facilities having been eliminated, had caused double handling of materials, that the steep grade of the service road to the west made it difficult or impossible for trucks carrying ready-mixed concrete to climb the hill when the road was covered with snow or ice, and that, irrespective of weather, the concrete would spill as the trucks went up the steep incline, and that the methods of access to new Page to the east were also unsatisfactory.

One of respondent's experts testified that the value of the property before the taking was $612,000 and after was $545,000, and of the $67,000 difference, $60,537 was for damage to the remainder. Respondent's other expert's testimony, while not identical, was for our purposes the same. One of appellant's experts placed the value of the property, excluding machinery, before taking at $296,000 and after at $304,500, an increase of $8,500. Appellant's other expert found a net increase in value of $15,000.

■ Appellant contends the trial court erred in giving three instructions and in the admission of evidence.

Respondent's instruction 1 was:

"The Court instructs the Jury that in determining whether there have been damages to the Volz Concrete Materials Com-

pany you will consider the taking of the land for the highway, including the triangular area lying south of the old highway and now situated under or near the overpass on which the defendant, Volz Concrete Materials Company, formerly unloaded their materials from railroad cars on the west side of said railroad spur track; the damages, if any, of making more difficult the access to the Volz Concrete Materials Company's whole property; the inconvenience, if any, it leaves said company in getting in and out of said property, and any impediments in the ingress and egress thereto, if any, and any drainage damage, caused by said taking of defendant's land, if any; and any deprivation of private parking areas, caused by the taking of defendant's land, if any; any damage occasioned by the double handling of defendant's products occasioned by the taking of defendant's land, if any; any damages, if any, by reason of the use of the temporary easement on defendant's property, and the condition in which the property of defendant is left as a whole, by such damage if any.

"And in considering all such items of damage as disclosed by all the evidence, if any, you should consider how much, if any, the defendant's property has depreciated in value, as a whole, including the plant thereon."

Appellant contends the foregoing instruction constitutes a comment on the evidence, compounds the elements that the jury is to consider, states them argumentatively, authorizes the allowance of double damages, and gives the jury a roving commission.

■ While we agree that the instruction in one respect at least goes into more evidentiary detail than would have been necessary or desirable, nevertheless, it appears that in applying the usual rule that it is proper to advise a jury what elements it may consider in estimating the amount of damages, we have approved instructions in condemnation cases which go into consid-

erable detail in describing specific matters which may be considered. While the case of State ex rel. State Highway Commission v. Day, 226 Mo.App. 884, 47 S.W.2d 147, 150, relied on by appellant, gives some support to its contention that the instant instruction is argumentative in form, still, the present instruction is more like the one (in so far as concerns the present question) approved by this court in State ex rel. State Highway Commission of Missouri v. Haid, 332 Mo. 606, 59 S.W.2d 1057, 1060 [12–14], than that considered in the Day case, supra. See also State ex rel. State Highway Commission of Missouri v. Caruthers, Mo.App., 51 S.W.2d 126, 131 [7], which distinguished the prior ruling in the Day case, supra.

It is also true, as appellant contends, that there may be some overlapping of the elements to be considered as they are set forth in the instant instruction, in so far as it directs the jury to consider, as separate elements, the damages, if any, in making access to respondent's whole property more difficult and the inconvenience to the *company* in getting in and out of the property. While those two elements separately stated should have been covered by one statement, nevertheless, it seems clear enough that a jury would, under the evidence in the case, understand that the reference to access related to the difficulty respondent's customers might have in driving into the plant to purchase materials and the other reference related to the difficulty respondent's own trucks might encounter in traveling up the incline of the service road. We are unable, however, to agree that there are any other overlapping damage items or elements set forth and we think the jury would not understand that it was authorized to award double damages on account of the statements just considered.

Appellant next contends that the instruction lists various elements of damage to be considered and then directs that the jury also consider the condition in which respondent's property was left as a whole, thereby, says appellant, "telling the jury to

allow the value of the strip of land taken for right-of-way, damages resulting from the various 9 elements outlined in the instruction, * * * and adding to that the decrease in the value of Defendant's entire property resulting from the appropriation." We think the appellant has overlooked the fact that instruction 1 does not direct the jury to *"allow"* any damages or to *"allow"* the value of anything or to "add" one element of damage to another; nor does the instruction purport to direct the jury to take various things into account in determining the "amount" of damages or in estimating damages or in assessing damages. The instruction tells the jury that "in determining whether" respondent has sustained *any* damages to "consider" (1) what land was taken; to consider (2) the damages, if any, resulting from several specific matters set forth; and to consider (3) the condition in which the property as a whole was left as a result of the foregoing damage, if any. Thus instruction 1 does not purport to be nor does it constitute, standing alone, either a measure-of-damage instruction or an "admeasurement of damages instruction." State ex rel. State Highway Commission v. Goodson, 365 Mo. 260, 281 S.W.2d 858, 861 [4], 862. It is necessary to consider the pertinent part of instruction 3, the "admeasurement-of-damages" instruction, in connection with instruction 1.

Instruction 3, in so far as presently pertinent, was: "The Court instructs the jury that in estimating the damages to the defendants it should take into consideration the fair market value of the strip of land taken by the plaintiff, the damages, if any, to the remainder of defendants' land and the special and peculiar benefits, if any, which may accrue to the remainder of defendants' land by virtue of the location and construction of the state highway * * *." It would appear that when instructions 1 and 3 are read together, No. 1 directs the jury as to what matters to consider in determining *whether* respondent has sustained damages, and No. 3 states the for-

mula to be applied in determining the amount of damages, if any. Further, it is apparent in reading the two instructions together that the damage elements listed in No. 1 which are to be considered by the jury in determining whether there was damage relate to the direction in No. 3 to determine the damages, if any, to the *remainder* of defendant's land.

The question then is whether when the two instructions are read as a single charge and reasonably construed a jury probably would understand that it was to allow an amount of damages for each of the listed elements in No. 1 (pertaining to the remainder) and to allow an additional separate amount for the decrease in the value of the remainder. If so, appellant's contention that instruction 1 is erroneous is well taken. Howell v. Jackson County, 262 Mo. 403, 417, 171 S.W. 342, 346 [9] [10].

We think that what instructions 1 and 3, considered together, told the jury (in so far as the instant question is concerned) was this:

In determining the amount of damages, if any, you award defendant, you should take into consideration the fair market value of the land taken, the damage, if any, to the remainder of defendant's land, and the special benefits, if any, that may accrue to defendant's land by virtue of the location and construction of the state highway; and in determining whether there was damage to the remainder of defendant's land you will consider the damage, if any, resulting from the access to defendant's whole property having been made more difficult, if so, and the condition in which defendant's property is left as a whole by such damage, if any; and in considering the foregoing items of damage, if any, you should consider how much, if any, defendant's property as a whole has depreciated; by special peculiar benefits is not meant, etc. (For brevity we have included in the foregoing only one typical damage item of the several listed in instruction 1.)

We think the jury understood that it was only to *consider* the separate respects in which damage had occurred, to consider whether and to what extent that damage, if any, had affected the value of the remainder of defendant's land as a whole, and to determine the amount of the damages, if any, to compensate for the damage to the remainder as a whole.

Appellant contends also that the phrase contained in the last paragraph of instruction 1, "all such items of damage as disclosed by all the evidence," constitutes a roving commission under which the jury would consider any damage it might think the evidence showed, irrespective of whether such was properly allowable. It appears, however, that the language "all *such* items of damage" refers only to the items or elements of damage which are listed in the instruction. That phrase is unlike the one contained in the Day case, supra, relied on by appellant, 47 S.W.2d 150, which, after listing the various matters the jury might consider in determining damages, concluded, "in fact, anything that would injure the salable value of the farm." It seems apparent that the phrase quoted from the Day case gave the jury the right to go far afield in determining damages, whereas the phrase of the instant instruction confined the jury to a consideration of only the elements specifically mentioned.

We do not approve instruction 1 as a model for use in future cases. The rules for the measurement of damages and the formula for the "admeasurement of damages" in condemnation cases are well established and instructions stating those matters should be clear and concise. Usually detailed items for consideration on the issue of damages, which often are crowded into damage instructions, are better omitted and left for jury argument. The question here, however, is whether the trial court committed reversible error by giving instruction 1. We hold that it did not.

■ Appellant attacks instruction 3, a portion of which was set forth in connec-

tion with our discussion of instruction 1. The entire instruction is: "The Court instructs the jury that in estimating the damages to the defendants it should take into consideration the fair market value of the strip of land taken by the plaintiff, the damages, if any, to the remainder of defendants' land and the special and peculiar benefits, if any, which may accrue to the remainder of defendants' land by virtue of the location and construction of the state highway. By special and peculiar benefits is not meant the benefits which the defendant derives in common with the other landowners generally in the vicinity upon the location and construction of said highway, but such benefits as will be enjoyed by the defendant which are not also enjoyed by other lands generally in the neighborhood."

′ Appellant contends that the instruction improperly defines special benefits and assumes that respondent was entitled to net damages. Instructions in the form of instant instruction 3 have been approved in State ex rel. State Highway Commission v. Duncan, 323 Mo. 339, 19 S.W.2d 465, 466; State ex rel. State Highway Commission of Missouri v. Haid, supra, 59 S.W.2d 1060 [15], and State ex rel. State Highway Commission v. Farmer's Estate, Mo.App., 68 S.W.2d 721, 723 [3-7]. We have examined the cases cited by appellant in support of his contention that instruction 3 improperly defines special benefits. Some of those cases preceded the Duncan case and none purports to affect the approval which the Duncan case gave to the definition of special benefits contained in the instruction in that case and in the instant instruction.

It is true, however, that the Haid case, supra, and the others above cited which approved an instruction like instant instruction 3 did not consider it in the light of another attack which appellant here makes, viz., that it assumed respondent was entitled to net damages. Appellant says that the first sentence of the instruction, "The Court instructs the jury that in estimating the damages to the defendants it

should take into consideration the fair market value of the strip of land taken by the plaintiff, etc.," advised the jury that respondent had sustained net damages. We do not agree. While it would have been better to insert after the phrase "in estimating the damages" the words "if any," still, it seems apparent that when the instruction is considered in connection with instruction 1 which made it clear that damage was not to be assumed, and when appellant's instruction 6 is taken into account which directed the jury not to "return a verdict for them unless you find their damages, if any, exceed such benefits, if any," the jury would understand that the language "in estimating the damages to the defendants" did not mean that the court had assumed or determined that respondent had in fact suffered net damages.

Appellant cites and relies upon State ex rel. State Highway Commission v. Riggs, 226 Mo.App. 1053, 47 S.W.2d 178. See also State ex rel. State Highway Commission v. Thayer, Mo.App., 62 S.W.2d 938, and State ex rel. State Highway Commission v. Powell, Mo.App., 226 S.W.2d 106, 108, 109. Those cases support appellant's contention in so far as they hold that the expression "in estimating the damages" without any qualifying words (or other expressions in the Thayer and Powell cases) as construed in connection with the other language in those particular instructions and in connection with the other instructions in those cases and under the evidence in those cases constituted prejudicially erroneous assumptions that the defendants in those cases had in fact sustained net damages. We have considered those cases and we are not persuaded by them that any assumption contained in the instant instruction was reversibly erroneous.

■ Instruction 2 was: "The Court instructs the jury that, under the Constitution of Missouri, private property cannot be taken for public use without just compensation being paid to the owner, and the law of this State gives the owner the right to have

such compensation determined by a jury. The plaintiff, State Highway Commission of Missouri, is seeking by this suit to condemn for public use the certain land mentioned and described in the evidence, which land is the property of the defendant, Volz Concrete Materials Company, a corporation. Therefore, in assessing the just compensation to be paid to it for said land taken, if any, and severance damage to the remainder, if any, you should consider all the evidence admitted by the Court under the instructions given by the Court to you."

Appellant contends the instruction erroneously directed the jury to allow "just compensation" and "severance damage" and thus and thereby directed an award of double damages. Of course, the instruction did not *direct* the jury to *allow* anything, but appellant correctly states that the "just compensation" to which a landowner is entitled for the taking of his land includes the value of the land and the damage to the remainder. If we were considering only the last sentence of the foregoing instruction, we should have no hesitation in holding that a jury reasonably would understand the words "just compensation" when used in the phrase "in assessing the just compensation to be paid to it for said land taken, if any, and severance damage to the remainder, if any, you should consider all the evidence * * *," meant the "just price" and the jury would understand the phrase as though it read, "in assessing the just price to be paid for the land taken, if any, and the severance damage to the remainder, if any, etc."

The forepart of the instruction, however, mentions "just compensation" and thus that portion should be considered to determine the meaning the jury would ascribe to "just compensation." When the instruction as a whole is considered it says in effect that the "just compensation" to be paid to defendant for the land taken is that compensation which the Missouri Constitution provides must be paid for private property taken for public use as determined by a

jury. Nothing, however, tells the jury that "just compensation" includes the value of the land and the damage to the remainder. It seems to us that the instant instruction is not erroneous unless the jury would understand that the phrase "just compensation" as used in the Constitution included "severance damage to the remainder." The fact, standing alone, that "just compensation" as used in the Constitution, as a legal matter, includes the "severance damage to the remainder" does not mean that the jury so understood or understood that "just compensation" as used had any special significance.

Appellant's instruction 6 was in part, "The court instructs you that the just compensation to which defendants may be entitled for any taking or damaging of their property for public use in the construction of State Highway D may be received either in the form of money or in the form of special benefits, or part in the form of money and part in the form of special benefits * * *." That is the only place we find, other than in instruction 2, "just compensation" mentioned and that reference is not particularly helpful except that it indicates that respondent might be entitled to "just compensation" for the land taken or "just compensation" for the damage to the land.

We are of the opinion that the jury was not in anywise misdirected or misled by instruction 2 but reasonably must have understood that it was to assess "just compensation" for the land taken in the sense of a just price therefor, and that it was to assess "just compensation" for the damage to the remainder in the sense of the amount of damages to fairly compensate therefor. We think reasonable laymen would read the last line of the instruction as though the bracketed expression, clearly implied, had been inserted at the place indicated: "Therefore, in assessing the just compensation to be paid to it for said land taken, if any, and [the just compensation to be paid to it for the] severance damage to the remainder, if any, * * *."

We do not consider the case of Kamo Electric Co-op. v. Baker, 365 Mo. 814, 287 S.W.2d 858, 864, 865, relied on by appellant, as authority for its contention. The instruction there (set forth when the same case was considered by the court of appeals, at 274 S.W.2d 497, 500 [4]) was in pertinent part, "in assessing the just compensation and damages to be paid, you should allow the defendants the difference between the fair market value of defendants' whole farm before and its fair market value after the appropriation by plaintiff of the strip of land mentioned in evidence, considering the uses to which the condemned land is to be applied." In the Kamo case here, 287 S.W.2d 858, 865, the court thought that instruction was erroneous because of the direction that the jury should assess the "just compensation and damages," in view of the particular evidence in that case as to subsequent uses to which the condemned land was to be applied, related in the evidence by witnesses and erroneously referred to in another instruction. The instruction was held prejudicially erroneous in the Kamo case because of the "readily susceptible and improper construction of instruction 3 when read in connection with instruction 5, * * *." 287 S.W.2d 865.

■ Respondent's witness Gittins testified that he had taken the photographs which were identified as defendant's exhibits J through M. Each of those exhibits consisted of a cardboard with six 3½" x 3½" or 4½" x 4½" photographs mounted thereon. He testified that he took the pictures during the time appellant was using the strip of land in which a work easement had been condemned while reconstructing route D. (The work easement, as heretofore noted, was a strip of ground running 357 feet in front of respondent's property and immediately north and adjacent to the 357-foot strip which was condemned for permanent right of way.) Mr. Gittins also said that some of the pictures typified the condition of the use easement during the period of construction, i. e., showed the use which the state made of the strip of ground.

Appellant's counsel, on examination for the purpose of an objection, developed that the witness could not point on the pictures to where the line was which separated the property taken for the permanent easement and the property taken for temporary use; that some of the pictures showed embankments and other conditions not existing either before or after the construction, and that those same embankments had been graded and sodded with grass and the dirt shoulders shown in some of the pictures had been leveled and sodded; that some of the pictures showed areas of the permanent right of way during the time of the construction.

Appellant objected to the admission of exhibits J through M on the ground that they did "not reflect the condition which existed either before or after the construction of the highway" and that the witness had been unable to distinguish the line between the temporary use easement and the permanent right of way. In his motion for new trial the assignment pertaining to the admission of the exhibits was that they "did not reflect the condition of the property as it existed either before or after the construction." Appellant now contends and argues that the exhibits were only half verified, that they tended to create prejudice against appellant by showing conditions such as the fact that the road in front of respondent's property was torn up during construction, which were not properly compensable, and that the exhibits had no tendency to show the condition of the property either before or after the construction.

In view of the objection at the trial as carried forward in the motion for a new trial, appellant, of course, may urge here only that the trial court erred in admitting the exhibits because they did not show the condition of the property as it existed either before or after the construction. Pierce v. New York Cent. R. Co., Mo., 257 S.W.2d 84, 88 [5]. That objection was not valid inasmuch as the evidence was undisputed that the state condemned a temporary use easement in a strip of respondent's land and thus

the question of the value of that easement was a jury question. One of appellant's experts valued that temporary easement at only $200. It seems clear that we may not say that some of the pictures included in exhibits J to M were not relevant and material in some degree on the question of the fair market value of the temporary use easement. No separate objections were made to specific pictures on specific exhibits—only an objection to all of the pictures on all of the exhibits. We hold, therefore, that the trial court did not err in admitting these pictures over the objection now available to appellant.

Appellant next contends that the trial court erred in admitting testimony as to "the loss of business" respondent suffered and refusing to declare a mistrial after such evidence had been adduced for the reason that such evidence was too remote and speculative for the consideration of the jury. Respondent's witness Neaf on direct examination testified that in forming his opinion as to the value of the property before and after condemnation he considered certain things. Among them were loss of the triangular tract and consequent double handling of materials, the loss of parking space around the office, the inaccessibility caused by the change in grade, "and then I considered the reduction in the *volume* of business in the year before and since the change." (Our italics.) There was no objection at that time. After the witness had continued to testify as to the matters upon which he based his conclusion he gave his opinion that the value of the property before the taking was $613,200. He was then asked his opinion as to the fair market value after the taking, whereupon appellant objected on the ground that the witness theretofore said that he had taken into consideration two improper items, viz., inaccessibility caused from the construction of the overpass and reduction in the volume of business. The court overruled the objection and the witness proceeded to state that in his opinion the value after the taking was $545,800 and that only $6,770 of

the difference represented the value of the strip and triangular plot of ground taken, and that $60,650 constituted the severance damage to the remainder and that there were no benefits. On cross-examination the witness testified that the $60,650 figure represented ten per cent of the value of the property after deducting $6,770 for the land taken. The question then was, "How did you arrive at that 10 per cent?" The witness answered, "Well, one of the things is that sales from December 1, 1955 to November 30, 1956 were $797,594.27. Sales from December 1, 1956 to October 30, 1956 (sic) were $467,540.94. That . . .." Appellant's counsel then requested that the testimony of the witness stating the damage to the remainder of the property was $60,650 be stricken because it appeared to have been based "upon the volume of business that was done." The court was of the opinion that the answer given was not responsive and struck the answer of the witness. Appellant's counsel then moved for a mistrial for the stated reason that the witness had stated improper matters not responsive to a question. The motion was denied. Appellant's counsel continued his cross-examination as to the manner in which the witness had arrived at the ten per cent reduction and, in response to a further question, witness said that the reduction in the amount of business compared to the average reduction in businesses of that kind "would make me think that the damage would be approximately 10 per cent." Appellant's counsel again asked that the witness' testimony as to the damage to the remainder be stricken. Before the court ruled it was developed that the witness took other things into account and after a recess appellant's counsel renewed the motion to strike and then requested a mistrial because the witness had stated elements which the court had ruled were improper. His motion to declare a mistrial was overruled. On redirect examination it was developed that the witness had taken into account many elements, including inaccessibility and the advantage of

a competitor in the same business in the neighborhood by reason of good accessibility.

We have set forth in some detail what the record shows with respect to appellant's present contention in order to demonstrate that the only matters of which appellant is now in a position to complain based upon the record in the trial court are: (1) the refusal of the trial court to strike the conclusion of the expert witness Neaf that there was a net damage to the remainder of $60,650 for the asserted reason that that opinion was based upon one element (among other proper elements) of damage which should not have been considered, viz., a reduction in respondent's volume of business, and (2) the refusal of the court to declare a mistrial "because the witness has brought up elements which the Court has formerly ruled were improper." Of those in reverse order. The only statement by the witness as to so-called "improper elements" which was not elicited either by or as a direct result of the questions of appellant's counsel on cross-examination was the original general statement of the witness that he had taken into consideration the reduction in respondent's volume of business in the year before and since the construction, and there was no objection to or motion to strike that statement.

The record shows further that the only testimony by the witness as to the amount of reduction in volume was stricken by the court. Clearly the trial court did not abuse its discretion in refusing to declare a mistrial because the witness made answers which appellant elicited on cross-examination.

The other matter which appellant by reason of his objections in the trial court is now in a position to urge, viz., that the trial court erred in refusing to strike the conclusion of the witness as to the damage to the remainder on the asserted ground that he had considered an improper element of damage is not now urged by the appellant. The present complaint as briefed is that *even if* a loss in volume of business could be taken into account, the testimony of the witness in this case was too conjectural and speculative to demonstrate that any decrease in the volume of respondent's business was a result of the appropriation of the property. Appellant argues that the basis for the witness Neaf's testimony was a comparison of respondent's volume for only two years and there was no showing that the loss in volume was caused by the appropriation of the land, and that consequently the testimony as to loss of volume was too conjectural and speculative. The difficulty, as we see it, with appellant's present position is that the witness' testimony with respect to the basis for his conclusion as to loss of volume was not developed sufficiently for us to determine whether the facts upon which he based his conclusion constituted a sufficient basis or were insufficient and thus his conclusion too conjectural and speculative to constitute probative evidence that such a decrease in volume was the result of the appropriation of the property. The fact, standing alone, that the witness had considered the volume of business in "the year before and since the change" does not enable us to conclude that there was in fact no reasonable basis for the conclusion that the reduction in volume was a result of the appropriation when it is considered that the witness was prevented from pursuing the subject or explaining the basis for his conclusion by the objection of appellant. In any event, however, respondent's other expert witness, Mr. Kraehe, testified to his conclusion as to the amount of damages to the remainder without any objection based on "loss of volume of business." He said the severance damage to the remainder was $60,537 (within $113 of the $60,650 testified to by Mr. Neaf whose testimony is in question) and there is no contention here by appellant that there was not substantial evidence to support the amount of the jury award in this case. Consequently, it seems reasonably apparent that appellant was not prejudiced by the refusal of the trial court to

strike Neaf's conclusion that the damage to the remainder was $60,650.

Appellant's final contention is that the trial court erred in admitting evidence based upon a consideration of the "advantageous" location of a competitor for the reasons that it was immaterial and speculative and tended to prejudice the jury against appellant. Over the objection of appellant, respondent's witness Neaf was permitted to testify that the plant of the Majestic Building Materials Company was immediately east of respondent's property and that it handled the same type of products. Without objection the same witness said that he took into account in forming his opinion as to damage, the advantages of respondent's competition, apparently on the question of the effect of the inaccessibility of respondent's plant as a result of the construction. After the witness had testified about other matters, appellant moved to strike the prior testimony of the witness on the ground that he had improperly taken into consideration the advantages of a competitor.

Respondent's expert witness Kraehe in stating the matters he took into consideration in forming his opinion as to damages had theretofore testified without objection and without subsequent motion to strike: "One of the first things that I noticed, the difficulty of access to their plant would probably divert business from the Volz Concrete Products Plant into the Majestic Plant at the corner which is much easier to reach." And the same witness on cross-examination testified without objection in connection with his testimony as to access, that "Most of the drive-in business of this plant comes from the west. In order to get into this plant from the west, the customer has to go to Walton Avenue, wait for the left turn light and then he has to turn left up this access road * * *. The practical effect is that the customer stops at Majestic plant instead of going up the hill to the Volz plant, with a considerable diminution of the volume of their business." (There was no motion to strike which specified as a reason the fact that the foregoing testimony was an improper matter for the witness to consider.)

It thus appears that there was no objection that the opinion of one of respondent's experts as to damage to the remainder was partially based upon a consideration of the advantage of respondent's competitor Majestic as a result of the difficulty in access to respondent's property. As noted the opinion of that witness as to the dollar amount of remainder damage was for practical purposes (within $113) the same as the opinion of the expert Neaf whose opinion is here attacked on the ground that it was based upon a consideration of the Majestic competition. Under the circumstances no prejudice could have resulted to appellant. The evidence admitted over objection was largely cumulative of similar evidence which had previously come in without objection. We hold no prejudicial error resulted from the admission of the evidence in question. Braun v. Roux Distributing Co., Mo., 312 S.W.2d 758, 763; Evinger v. Thompson, 364 Mo. 658, 265 S.W.2d 726, 734 [16].

The judgment is affirmed.

HOLMAN and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL C., is adopted as the opinion of the court.

All concur.