KAMO ELECTRIC COOPERATIVE, a corporation, Plaintiff-Respondent,

v.

Russell BROOKS and Eunice Brooks, Defendants-Appellants.

No. 7861.

Springfield Court of Appeals. Missouri.

July 25, 1960.

Ruyle & Henry, Neosho, Emory Melton, Cassville, for defendants-appellants.

Jack L. Rorschach, Vinita, Okl., Stewart, Reid & Turner, Springfield, John M. Rice, Neosho, for plaintiff-respondent.

SAMUEL A. DEW, Special Commissioner.

Plaintiff brought this action in Barry County, Missouri, to condemn an easement across the farm of the defendants for the purpose of constructing, operating and maintaining an electrical transmission line. Thereafter, the commissioners appointed by the court found the amount of defendants' damages sustained by the condemnation to be $1,955. Exceptions to the report were filed by both plaintiff and defendants. Upon the application of plaintiff for a change of venue, the cause was transferred to the Circuit Court of Newton County, Missouri. Upon consideration by the jury of the issue of defendants' damages, a verdict was rendered fixing the same at $1,200, for which the court entered judgment.

The notice of appeal as shown by the transcript reads: "Notice is hereby given that Russell Brooks, defendants above named, hereby appeal" etc. However, the original notice of appeal is on file in this court and defendant Eunice Brooks is named therein as joining in the notice and appeal, of which we shall take judicial notice, and she will be so considered. Plain errors may be considered on appeal, though not raised or preserved by the parties. Supreme Court Rule 79.04, V.A.M.R.

Defendants' farm consists of 182.5 acres and is well located on Highway 37, in Flat Creek Valley between Cassville (county seat) and Washburn in Barry County, Missouri. Situated near the highway are the defendants' modern two-story house, their barn, shed, granary and other outbuildings, all in good state of repair. From that point a view may be had of most of the farm. About 101 acres of the farm are bottom land, which could be plowed in "one land." The farm has been used generally for agricultural purposes but, at the time in question, was used for pasturage. Good wire fences enclose the land.

The perpetual easement acquired by the plaintiff over and across the defendants' farm covered a strip 100 feet wide and 2,095 feet long, running generally from the

northeast to the southwest. At each of four locations 600 feet apart on this strip is a setting of two poles 10½ feet apart and 70 feet high, each pair connected with cross-arms on which are strung five electric transmission lines. Three of such settings are located on the bottom land and one west of the highway.

According to parts of the petition for condemnation, offered by agreement and read into the record, further conditions of the easement were sought and granted, in connection with the construction, operation and maintenance of the transmission line. These, in part, consisted of the privilege of erecting necessary gates for ingress and egress to and from the line; cutting trees which obstructed the construction and maintenance; removal of any structures within 50 feet of the line that might endanger the same by fire, storm or otherwise, or cause the same to become dangerous to life or property; stipulation that no other parts of the farm would be enclosed by the plaintiff by any fences except where the existing fences do not provide for sufficient egress and ingress to and from the right of way; provision that no use will be made of the easement other than for the transmission line described, and that defendants' use of the farm will not be obstructed or interfered with except insofar as such may be done by the construction, maintenance and operation of the electric line, and a provision that fences now existing will be replaced in as good condition as at present if removed in connection with the construction, maintenance and operation of the line.

In the course of the defendants' evidence to establish the amount of their damages, their witness Earl Patton, testifying as an expert, said that in his opinion the market value of the farm before the easement was $40,000 and $36,000 afterwards, making the damages $4,000. Among other matters considered by him in arriving at the damages were, he testified on cross-examination, "It's a cloud on the title," that the plaintiff's right to enter for purposes of the easement "will hang in a cloud over the property"; that the owners have lost a part of their property rights in the farm; that "I know it will hurt the sale" of the farm; that "no man in his right mind will pay for that what he would have paid without the poles." Upon request of the plaintiff's counsel to strike the witness's testimony as to future and speculative damages, the court stated it did not recall any such "future speculative" damages, but the court thereupon told the jury to disregard any "future and speculative damages" mentioned by Mr. Patton, which ruling, plaintiff's counsel stated, was satisfactory. The court then stated that speculative and future damage is not a proper element of damage. No further specification of the testimony referred to was made.

Defendants' witness W. I. Peck, an expert appraiser, estimated the market value of the farm before the easement at $35,000 and afterwards at $31,500, making the damages in the amount of $3,500. In explaining his appraisal on cross-examination, he said the easement "puts a slur on the title of the land, and most people buying a piece of land don't like that thing on there"; that "consequently, when you put it on record, it is a slur on your land, and the buyer coming in to buy that land considers that fact and will give less for it."

One of plaintiff's witnesses, Luther Green, had testified that in his opinion the market value of the farm prior to the easement was $35,000 and $33,900 thereafter, and that the damages were thus $1,100. On cross-examination defendants' counsel asked the witness if the easement, even without the poles, did not create "a cloud on the man's title." On cross-examination of another of plaintiff's witnesses defendants' counsel asked: "And you do know that that represents a cloud on the title, don't you?" Defendant Russell Brooks testified that the market value of his farm before the easement was $40,000, and $30,000 thereafter, and the dam-

ages $10,000. In the course of his testimony he testified:

"A. * * * (e)very time I look down across the bottom I see that line there.

"Q. Now then you are objecting to the looks of this, are you, you just mentioned that? A. Yes, I don't like the looks of them.

"Q. How much of this ten thousand dollar figure that you have given us would you say you would attribute or place to this matter of looks? A. I would have to hold to the whole farm.

"Q. You would say the whole ten thousand dollars? Is that what you mean? A. That's on the whole farm, yes.

"Q. Now then you are not telling us though that you mean this whole ten thousand dollars is attributable to the looks? A. I am holding to the farm. I guess you would count that looks."

In the cross-examination of plaintiff's witness Summers, defendants' counsel asked the witness if he did not think the transmission line "damages the looks of the farm," to which the witness answered in the negative, and counsel again asked: "Q. But you didn't give him anything for damaging the looks?" Likewise in the cross-examination of plaintiff's witness James L. Haddock, defendants' counsel asked:

"Q. Did you take into consideration the loss in looks that farm has suffered by virtue of this easement which runs across the bottom here? A. Have we established that it suffered in looks?

"Q. I say did you take in consideration any damages occasioned by that, if any? A. No."

The only points of error presented for review in this appeal are the giving of Instruction No. 4 and the giving of Instruction No. 6, both requested by the plaintiff. Other instructions were given by the court directing a verdict for the defendants for just compensation, defining "just compensation," explaining the terms of the easement and its effects on the rights of the parties, forbidding a quotient verdict, and stating the rule as to credibility of the witnesses and the weight of the evidence. In defining "just compensation" the court had instructed the jury that such must be ascertained "by determining the difference between the fair market value of the whole land or property immediately before the appropriation on the 25th day of February, 1959, and the fair market value of said land or property immediately after such appropriation in view of the uses to which the property could thereafter be applied." As to the latter instruction (No. 3), and the rule of law therein contained, there appears to be no present dispute. Texas-Empire Pipe Line Co. v. Stewart, (banc), 331 Mo. 525, 55 S.W.2d 283; Missouri Power & Light Co. v. Creed, Mo.App., 32 S.W.2d 783, 786.

The definition of "market value" was contained in Instruction No. 8, given in the instant case at the request of the plaintiff, with which the defendants claim Instruction No. 4 is in conflict. For purposes of the reference made, Instruction No. 8 is first shown below:

"The Court instructs the jury that the market value of the property means its actual value, that is, the fair value of the property as between one who wants to and is able to purchase and one who wants to sell it; not what could be obtained for it in peculiar circumstances when greater than its fair value could be obtained; not its speculative value; not the value obtained through the necessities of another; and not its sentimental value to the defendant; nor on the other hand, is it to be limited to that price which the property

would bring when forced off at auction under the hammer.

"The question is, if the defendant wanted to sell the property, what could be obtained for it upon the market from parties who wanted to buy and would and were able to give its full value, or what price could be obtained for it on the usual or ordinary terms of private sale."

Instruction No. 4, given at the plaintiff's request, and, as stated, complained of by the defendants as their first point of error, reads as follows:

"The Court instructs the jury that in arriving at your verdict and in estimating the amount of compensation, if any, which you will allow the defendant, you should not take into consideration damage, if any, which may arise because the existing easement would be a 'draw-back' in case of a sale of the tract."

Defendants contend that Instruction No. 4 is calculated to mislead and confuse the jury; that it not only excludes from the jury's consideration damages that might accrue in the future by reason of the existing easement, but improperly precludes consideration of elements of depreciation arising presently out of the actual taking of the easement; that such failure to differentiate between the two classifications of damages is confusing and misleading and wholly unnecessary in view of Instruction No. 8; that the jury is left "at sea" as to whether the actual taking of the easement may be considered in arriving at the market value as directed in Instruction 8.

The plaintiff, on the other hand, insists that because of the testimony of two of the defendants' expert witnesses that in forming their opinions of the defendants' damages, they considered the fact that the easement would create a "cloud" or "slur" on the title or property and would hurt the sale of the land, Instruction No. 4 properly cautioned the jury not to consider any alleged damages arising out of the easement which would be a "draw-back" in case of sale of the farm. Such, plaintiff claims, would constitute elements of damage which are too remote, speculative and conjectural for proper consideration.

In the connection here used, the word "draw-back" is defined in Webster's International Dictionary (2nd Ed.), as "a hindrance; objectionable feature." As noted, the jury was told to find the market value of the whole tract before and after the easement, assuming a seller who "wanted to sell" and a buyer who "wanted to buy and would and was able to give its full value, or what price could be obtained for it on the usual or ordinary terms of private sale," excluding speculative values and situations involving peculiar circumstances, necessities of others, and sentimental values. The qualifications of the experts in question were not disputed. Their testimony on cross-examination explanatory of their opinions as to the market values, and objected to as applicable to future and speculative damages, was not effectively expunged at the trial and stands unchallenged except by the withdrawal Instructions No. 4 and No. 6. This being the record, we turn to the law on the question raised as to Instruction No. 4.

In State ex rel. State Highway Commission v. Bruening, Mo., 326 S.W.2d 305, 309, the Supreme Court quoted with approval the following: " 'In estimating the amount of consequential damages sustained, or, in other words, the amount of the depreciation in the value of the land, the owner is entitled to have the jury informed as to all those facts relating to the condition of the property which would naturally impress a person of ordinary prudence in negotiating for the purchase of the same. * * * ' " See also City of St. Louis v. Paramount Shoe Mfg. Co., 237 Mo.App. 200, 168 S.W. 2d 149, 153; Missouri Power & Light Co. v. Creed, supra.

In speaking of the proper element of compensation for consequential damages in

such cases, it was recently said in State ex rel. N. W. Electric Power Cooperative, Inc. v. Waggoner, Mo.App., 319 S.W.2d 930, 934: "This includes damages resulting from any destruction, restriction, diminution, or interruption of the rights of ownership in and to the property."

Charged in Instruction No. 8 with the duty to determine "what could be obtained for it (the whole tract) upon the market from parties who wanted to buy and would and were able to give the full value, or what price could be obtained for it on the usual or ordinary terms of private sale," the jury was also directed by Instruction No. 4, in effect, that if the existing easement should cause a hindrance, objectionable feature to or a "draw-back" to the present sale of the farm as a whole, then any damages to the owners so caused must be ignored.

█ Since Instruction No. 4 does not limit its application to features of the easement which are uncertain, speculative or not reasonably to be anticipated, and does not differentiate those factors from those which are conceded, or are reasonably to be anticipated, the question arises whether the instruction authorizes consideration of elements that are certain, presently existing and which the jury may reasonably find calculated to hinder, or to offer an objectionable feature or a "draw-back" to a present sale of the whole tract, such as the actual number of poles and wires, their locations, the nature of their use, the entry privileges granted, the restrictions on structures within fifty feet of the easement, the perpetual duration of the easement, etc. The jury might reasonably have found that at least one or more of those known factors last named might affect the present ready sale of the farm and its market value accordingly.

In State ex rel. Kansas City Power & Light Co. v. Gauld, (banc), 360 Mo. 795, 230 S.W.2d 850, cited by the plaintiff, one of several witnesses testified he based his estimate of the market value on various elements and one was that the easement would be a "draw-back" on a sale of the tract involved. All of the testimony of such witness and others on the question of damages was stricken by the trial court on motion by the appellant and the issue of the propriety of considering elements which would constitute a "draw-back" on the sale, was not ruled upon by the Supreme Court on appeal.

Numerous precedents and authorities are cited by the plaintiff affirming the rule that elements of damage which are remote and speculative may not be considered in the determination of the market value of a tract of land on a part of which an easement has been taken by condemnation. Missouri Power & Light Co. v. Creed, supra; KAMO Electric Cooperative, Inc. v. Baker, 365 Mo. 814, 287 S.W.2d 858; Orgel on Valuation Under Eminent Domain, Vol. 1, § 62, loc. cit. 282; KAMO Electric Cooperative, Inc. v. Dicke, Mo.App., 296 S.W. 2d 905; Nichols on Eminent Domain (3rd Ed.), § 16.103(1), p. 40.

█ The question confronting us in the challenge of Instruction No. 4, however, is not merely whether it properly excludes elements of damage considered by the expert witnesses in forming their opinions of the market value of the defendants' farm before and after the easement, as not sufficiently direct and certain, but whether the instruction further improperly excludes from the consideration of the jury elements of damage which *are* certain and direct. It is our opinion that it does, and that the giving of it was prejudicial error.

For their second point of error defendants challenge Instruction No. 6, given at plaintiff's request. It is as follows:

"The Court instructs the jury that in arriving at your verdict and in estimating the amount of compensation, if any, which you will allow the defendant, you should not take into consideration damage, if any, which may arise because the 'looks' of the transmission

lines across the tract would be detrimental to its value."

Defendants likewise claim that the above Instruction No. 6 prohibited the jury from considering an element of damage recognized by the law. It will be noted that this instruction, unlike Instruction No. 4, deals directly with one specified element and its alleged effect upon the market value, namely, the unsightliness of the transmission line. It does not by its provisions comprehend unspecified elements of damage, irrespective of their present existence.

Defendants rely for support of their attack on Instruction No. 6 on decisions from other jurisdictions. It is their position that the exact issue has not been determined by the courts of this state. They cite Ohio Public Service Co. v. Dehring, 34 Ohio App. 532, 172 N.E. 448, 449, wherein the court, in discussing the unsightliness of a transmission line on a condemned easement, said that such "was a proper element for the jury to consider in determining damage to the residue." They also cite Texas Power & Light Co. v. Jones, Tex.Civ.App., 293 S.W. 885, 887, in which that court ruled that, under a Texas statute involved (Vernon's Ann.Civ.St. art. 3265), the poles, cross-arms, wires, etc., of a transmission line are "an unsightly object, disagreeable or repellent to sight, its presence would naturally have a tendency to affect adversely the market value of the land."

In further support of their contention that such an element of damage is proper for the consideration of the jury, the defendants again cite State ex rel. N. W. Electric Power Cooperative, Inc. v. Waggoner, supra, wherein, at page 934 of 319 S.W.2d, the court, as above stated, defined "consequential damages" as "any destruction, restriction, diminution, or interruption of the rights of ownership in and to the property." They cite again Missouri Power & Light Co. v. Creed, supra, as authorizing such an element of damage under the broad description of proper elements set forth in that decision, which re-

quires the element of damage to be "reasonably expected to follow from the invasion of the premises by the plaintiff, and the consequent disturbance of the defendants' dominion, as contradistinguished from such items of damage as are purely remote, speculative, and conjectural in their nature, and not fairly * * * to be anticipated."

The plaintiff, on the other hand, quotes Nichols on Eminent Domain (3rd Ed.), § 16.103(1), loc. cit. 43, wherein the author states that offense to one's "aesthetic sensibilities" by reason of the unsightliness of the poles, towers and lines has been held "not to constitute a compensable element, at least insofar as farm lands are concerned." The cases of Illinois Power & Light Corp. v. Barnett, 338 Ill. 499, 170 N.E. 717; East St. Louis Light & Power Co. v. Cohen, 333 Ill. 218, 164 N.E. 182, and United Power & Light Corp. of Kansas v. Murphy, 135 Kan. 100, 9 P.2d 658, are cited among others holding to the same effect.

As authority in this state, plaintiff cites State ex rel. Kansas City Power & Light Co. v. Gauld, supra. There the element of the "looks" of a transmission line as detrimental to the market value was stricken by the trial court but was not an issue on the appeal. In State ex rel. N. W. Electric Power Cooperative, Inc. v. Waggoner, supra, the element of the "looks" of a transmission line was relied on, among other factors, by a witness in estimating the damages to the remainder of a farm on which the easement for the line was taken. The claim had to do with the effect on a proposed homesite. The issue was not ruled upon because under the terms of the easement the proposed homesite was destroyed and no building could be so located.

"Unsightliness" was held in Kansas to be an element of damage in such cases too remote and conjectural for consideration in United Power & Light Corp. of Kansas v. Murphy, supra. The court in Missouri Power & Light Co. v. John Hancock Mu-

tual Life Ins. Co., Mo.App., 58 S.W.2d 321, strongly infers that the appearance of towers on a transmission line constructed on an easement across a farm is an element of damage too remote and conjectural for consideration in fixing the depreciation. Cited in 29 C.J.S. Eminent Domain § 139, p. 980, note 4, is Louisiana Highway Commission v. Boudreaux, 19 La.App. 98, 139 So. 521, holding that "aesthetic" considerations affecting the shape and appearance of land not taken is an improper element of damage in condemnation proceedings. Sentimental value may not be considered. Potts v. City of Philadelphia, 28 Pa.Dist. 498.

It must be borne in mind that under the evidence the land to be affected in this case was not shown to be a tract of such description, adaptability and use as to make the element of "looks" a matter of peculiar significance in its market value. In an instruction of which no complaint is here made the court had told the jury that such market value must be determined "in view of the uses to which the property could thereafter be applied." Had the property across which the transmission line was constructed and to be operated and maintained been shown to be an amusement park, cemetery, campus, institutional grounds, club grounds, school or hospital lawns, garden or a beautified estate, or the like, the element of special damage to the "looks" by the poles and wires of the transmission line might require a particular consideration of that element of damage. The property here involved was shown to be a farm, heretofore used for agricultural purposes and presently used for pasturage. The evidence does not show that the element of "looks" as constituting damage to the farm by the easement is peculiar to the defendants' farm nor that such element has any special application to the uses to which the property could thereafter be applied. See 29 C.J.S. Eminent Domain § 112, p. 924; State ex rel. State Highway Commission v. McMurtrey, Mo., 300 S.W.2d 521.

■ There are numerous decisions in other states cited by plaintiff, and others noted in further research on the question at hand, and it appears that the weight of authority supports the view that what appears to the witnesses as a detriment to the market value of a farm property because of the "looks" of a transmission line is too uncertain, speculative and conjectural to be considered as an element of damage. Accordingly, we hold that the giving of plaintiff's Instruction No. 6 was not error.

For the reasons stated in the opinion, the judgment herein should be reversed and the cause remanded. The Special Commissioner so recommends.

The foregoing opinion by SAMUEL A. DEW, Special Commissioner, is adopted as the opinion of the court, and the judgment for defendants is reversed and the cause is remanded.

STONE, P. J., and McDOWELL, J., concur.

RUARK, J., not sitting.