STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION of Missouri,
Plaintiff-Appellant,

v.

Forrest G. RIDGWAY et al., on exceptions of
Raymond G. Sims and Nelsie Opal
Sims, Respondents-Defendants.

No. 24367.

Kansas City Court of Appeals.

Missouri.

Dec. 6, 1965.

Robert L. Hyder, Joe Bill Carter, Jefferson City, for appellant.

Hulen & Hulen, Moberly, for respondents.

SPERRY, Commissioner.

Plaintiff instituted proceedings for condemnation of land owned by various parties, including Raymond G. and Nelsie Sims, referred to herein as defendants. Plaintiff admitted damages of $6,500.00. Trial to a jury in circuit court resulted in a judgment for defendants in the sum of $15,000.-00. Both parties appealed.

Defendants owned a contiguous tract of ninety-one acres. It was roughly rectangular in shape, except that a rectangular piece at the northwest corner was not included. The tract fronted Highway K, a state road on the north, for a distance in excess of one fourth mile, and extended southward. At the northwest corner, lying east of the rectangular piece of land not included in the tract, were located a modern six room house, a barn, five out buildings and a well. This tract lies within the city limits of the City of Cairo, in Randolph County, this state. The city limits bound it on the south.

Plaintiff took, for improvement of Highway 63 cut off, a strip beginning on Highway K and running south through the entire length of the farm, consisting in all of about ten acres, thereby leaving about forty acres on each side of the newly located Highway 63.

In addition to the structures heretofore mentioned, there is another barn and a well located in the southern part of that portion of the farm on the west side. There are no improvements on the east side of 63 cut off. Plaintiff also took a strip off of the north side of this property, contiguous to Highway K, so as to limit access to Highway K in front of the improvements, except through a gate on the west side of defendants' land, and for several hundred feet east thereof. Plaintiff also took a rectangular piece out of the east side tract, for "channel change", and out of the west side tract for "ponding", adjacent to a culvert crossing the highway at this point. This "ponding" area will, ordinarily, have from two to three feet of water in it. A total of about ten and forty-five hundredths acres of land was taken.

Plaintiff, at the outset of the trial, introduced a drawing showing defendant's land as it appeared after the taking. It also introduced exhibit A, consisting of fourteen sheets showing Highway 63 cut off, together with the new highway construction, some showing "cross overs" from one tract to another, of lands owned by persons other than defendants, whose land is divided by the right of way. No such cross over was provided for defendants' property, as is shown by the plot of defendants land. Plaintiff constructed a concrete culvert across the right of way, extending from the east tract to the west tract. As originally planned it was six feet wide by four feet high, connecting the "channel change" and the "ponding" areas. This was inadequate for cattle to cross through and defendants were permitted to pay $360.00 and the culvert was raised to six feet in height. There was evidence to the effect that the structure was of limited value as a cattle crossing and of

no value to defendants for any other purpose. The evidence was to the effect that, because of construction of the cut off and of the limitation of access from defendants' farm to Highway K, defendants had no access to the east tract except by going through a tract owned by others, to the south of this farm, and using such landowners' cross over, then entering their own land lying to the north, from the right of way. There was evidence that they *might* be able to get permission from plaintiff to build an access into the east tract, from Highway K, at the extreme eastern edge of their land. Such a construction would be expensive and difficult. Defendants had no water on the east tract but ran a line under the highway from a well in the southern part of the west tract.

Defendants owned, rented, and farmed almost four hundred acres of land lying on the north side of K, east of their home. That land was used for production of cattle and feed. The cattle were fed on the home farm, the northern portion of which was in good blue grass, and the southern portion of which was row cropped. The feed lot, about four acres, and a barn, were located in the southern portion of the west tract, near a well. All of the land operated by defendants constituted one farm unit and was operated from the home farm.

There was evidence to the effect that defendants had received offers to purchase lots off of that portion of their land abutting Highway K, but that, after the condemnation, including the limited access to K, such lots could not be reached from Highway K except by construction of a road through the gateway entrance, west of the house, thence south, thence east behind the house and other improvements previously existing. The roadway would necessarily be located behind the lots, if any were sold, and there would be no other access to a public road except over that roadway.

There was evidence tending to prove that there would be "point" rows on the east tract because of the curving course of the right of way, and that this would lessen the usability and productivity of the east tract. A number of qualified witnesses testified to the effect that the conditions brought about as above stated, damaged the remaining tracts heavily. Some stated that defendants, prior to the taking, had a farming unit, afterwards, they had two completely separate tracts of land; that produce from the east tract could not be moved to the west tract except by permission of another landowner, nor could farm machinery be moved from one tract to another.

Mr. Sims stated that construction of a mile of fence was required after the taking; the materials therefor would cost $1700.00 and that labor required would cost from $1500.00 to $1700.00. There was evidence from plaintiff to the effect that the land actually taken was worth at least $2425.00. Plaintiff concedes that the total damage it owes is $6500.00. From the evidence it appears that plaintiff allowed less than $600.00 as damages for restricting defendants' access to K, and for completely severing the two tracts from each other.

■ At the beginning of the trial plaintiff's counsel introduced into the record, by stipulation, exhibit A, consisting of fourteen pages of drawings depicting various sections of the right of way of 63 cut off, together with the names of landowners affected by the construction. These sheets indicate that on certain of the tracts affected, where a farm was divided by the construction, plaintiff had constructed cross overs. Defendants' counsel called this fact to the attention of an engineer witness and sought to show by him that cross overs had been provided on some tracts but none was provided for the Sims land, although similarily situated. Plaintiff objected on the grounds that the situation as to tracts, other than that of defendants', was not material to this inquiry. The court sustained the objection. After some discussion the court ruled that, since the exhibit was in evidence, anything appearing thereon was also in evidence. Thereupon, defendants withdrew

offer of evidence as to crossings appearing on other parts of the right of way. The court announced that the record shows that no evidence had been presented to the jury concerning the other cross overs appearing on exhibit A. Thus the record stood until after the defendants rested. Plaintiff then recalled Mr. Sims for re-direct examination. He was examined as to cross overs located so as to serve other land and if plaintiff did not refuse to put one in for him because of safety reasons. Thereafter, Mr. Sims, on counsel's examination, testified as to the existence of cross overs on other parts of the right of way. Plaintiff injected that subject into the record. It may not complain of error, if it was error, which it invited. 88 C.J.S. Trial § 116, page 236.

■ Defendants theory was that damages were suffered because a part of their land was cut off from all access to other parts. This was an important issue, rendered more so because defendants' access to route K was also greatly limited, in such a manner that access therefrom to the east portion of their farm was inconvenient, expensive and uncertain. Limited access from it to the major portion of the frontage thereon was a damaging factor. This case is unlike the situation presented in State ex rel. State Highway Commission v. Clevenger, 365 Mo. 970, 291 S.W.2d 57. The ruling in that case does not control the case at bar. In this case the court specifically instructed the jury (p. 4) that no damages could be allowed for denial of access to a highway not in existence prior to the taking (as in this case). The court held, in the Clevenger case, that severance of one part of a farm from the other may be a separate damaging factor for the jury to consider. See page 62 of the above mentioned opinion.

■ Plaintiff contends that the court erred in failing to strike the testimony of witness Skinner on the grounds that he stated that, in his opinion, defendants were damaged to the extent of $10,000.00 because they were denied a crossing over route 63 cut off. That factor was one for consideration by the jury in this case, in arriving at their verdict as to the total damages suffered, or as to the value of the land remaining after the taking. Any evidence tending to establish the difference in value of the land in question before and after the taking is, ordinarily, admissible. This would include evidence tending to show the fair market value of the land remaining after the taking. Certainly, limitation or denial of access to a part or all the remaining land is an element to be considered. State ex rel. N. W. Elec. Power Co-op., Inc. v. Waggoner, 319 S.W.2d (Mo.App.) 930, 934–935. To separately evaluate the various factors is difficult. All evidence of values is based upon the opinion of qualified witnesses. Texas Empire Pipe Line Company v. Stewart, 331 Mo. 525, 55 S.W.2d 283, 285. The point is ruled adversely to plaintiff.

■ Plaintiff asserts error because the court failed to strike the testimony of defendant Raymond Sims, who stated that a large part of his damage was due to not having an entrance across Highway 63 cut off, but he stated that he could not specify how much of his damage was due thereto. What we have previously said with regard to the fact that limiting or denying access to property affected by the taking may constitute an element of damage in this kind of case, leads to our conclusion that no error was committed in this regard.

■ Finally, plaintiff urges that the verdict is excessive. It complains that all witnesses on damages for defendants, excepting one, included in their estimates of damages the denial of a crossing over the right of way from one part of the farm to the other. As before stated, their reference to that circumstance was proper because it was one of the circumstances tending to show damages to the remaining land by reason of severance of one part from another.

Defendants' witnesses, a number of them, gave it as their opinion that the value of the

farm prior to the taking was $36,000.00, and that the market value of the remaining property, after the taking, was roughly, one half of its previous value. Defendant Sims testimony was that the value of the land was, prior to the taking, $40,000.00; and he stated that, thereafter, its value was $18,000.00. Three witnesses for plaintiff fixed the damages at much less than $10,-000.00; but the jury could legally arrive at a verdict of $15,000.00 in this case, and such verdict would be well within the limits of the evidence as a whole. In view of this fact we may not hold the verdict to be excessive.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court.

CROSS, P. J., HOWARD, J., and FRANK W. HAYES, Special Judge, concur.

BLAIR, J., not participating.