**KAMO ELECTRIC COOPERATIVE, INC., Appellant,**

v.

**William C. CUSHARD and Elizabeth Ruth Cushard, Respondents.**

**No. 24640.**

Kansas City Court of Appeals.

Missouri.

June 5, 1967.

Jack L. Rorschach, Vinita, Okl., John M. Belisle, Belisle, McNabb & Kyser, Butler, for appellant.

E. J. Murphy, Butler, for respondents.

CROSS, Judge.

By this proceeding plaintiff Kamo Electric Cooperative, Inc., has condemned a strip of land 100 feet wide and 2805 feet long across the 220 acre farm of defendants William C. Cushard and Elizabeth Ruth Cushard, as a perpetual right-of-way easement for purposes of constructing and maintaining an electric transmission line. The commissioners appointed by the court assessed defendants' damages at $1,250.00 and defendants filed exceptions to the award. Upon trial by a jury in circuit court on the issue of how much the market value of defendants' farm had been reduced by its subjection to the easement, the jury returned its verdict awarding defendants the sum of $4,800.00. Plaintiff has appealed.

Kamo's principal assignments of error are (1) that the trial court erred in receiving and permitting the jury to consider evidence as to the "looks" and "unsightliness" of the transmission line "in assessing respondents' damages" and in refusing an instruction withdrawing that element of damage from the jury's consideration, and (2) that the trial court erred "in

receiving and permitting the jury to consider the element of danger or hazard in assessing respondents' damages" and in refusing an instruction withdrawing the element from the jury's consideration.

Defendants' farm contains 220 acres of well improved crop and pasture lands in Bates County, approximately 2 miles west of Passaic. At the present time, about half of the farm is in pasture land grazed by Angus cattle and the other half is under cultivation. The entire farm is tillable. It was described by Harlow Tipton, Kamo's witness, as one of the top twenty farms around the area. The 100-foot wide right-of-way easement runs diagonally north and south clear across the farm for a total distance of slightly in excess of one-half mile. It traverses both pasture and crop fields. Upon and along the easement plaintiff has constructed a 69,000 volt electric transmission line consisting of eight single poles supporting crossarms, insulators, circuit breakers, wires, lightning arrestors and other necessary electric equipment. Minimum wire height is specified as 22 feet. The line is plainly visible from the public highway and is located within 600 feet of defendants' farm improvements.

Defendants produced three real estate salesmen, H. H. Page, Glenn Cummings and Don Simpson, all of whom testified on the question at issue. Mr. Page testified that the farm had a value of $50,000.00 prior to the construction of the line and a subsequent value of $45,000.00, thereby depreciating the property's value by $5,000.00. The witness stated that in arriving at his figures he took into consideration "the looks" of the transmission line as it affected the farm's market value, and that 50% of the $5,000.00 depreciation was attributable to that factor. The remaining 50% was for "inconvenience" in farming and tillage. Mr. Page stated that the easement was located on the best part of the farm, was "most noticeable" when you drive up and down the highway, and that it is a "sore spot". When asked what he took into consideration in arriving at "this $5000.00", the witness answered: "A. The very fact that your easement goes diagonally across the best part of the farm is most noticeable when you drive up and down the highway, and I think it is a sore spot. In most of the places I will go along with an easement if it follows the fence lines, or if it follows the road, but when it goes diagonally across the field, and especially a farm, I think you have ruined that farm for sale. I wouldn't buy one. * * * I think its very detrimental. A prospective buyer approaches a farm, or a piece of property, and the first impression he has of that property I think has a great deal to do with the price tag that he is going to put on that property. And with a high line in the present position that its in on this particular property, I think that most buyers, or it is my opinion the buyer would say, 'Let's go look at another farm' ".

Glenn Cummings valued the property at $49,500.00 before the taking and at $44,000.00 after the appropriation. He attributed the $5,500.00 diminution in value to "nuisance value" and "unsightliness"— 65% or $3,750.00 to the former and 35% or $1750.00 to the latter. He testified on cross-examination as follows: "Q. Mr. Cummings, what did you take into consideration when you arrived at this figure of $5,500.00 difference in value before and after? A. Well, I was thinking mainly in terms of a resale of the property, or sale of the property, rather. People object to those things on their farm because of their nuisance value and looks, and it certainly didn't do anything to improve the farm, its definitely a detriment to it. Q. Well, you took into consideration that there is objections to people buying farms that has light poles across it? A. Yes, across a farming area of it." When asked on cross-examination to enumerate the elements he had considered in arriving at his estimate of damage, Cummings stated there was "also possibly some danger from people being on a load of hay and so forth

up close to the line and possibly touching it". Thereafter defendants' counsel inquired, "You say you base some of this on danger". Over Kamo's objection the witness was permitted to answer: "There would be a danger involved here if he sold this hay, or loaded it in the field on trucks which would go seven or eight bales high and then a man standing on that loaded truck could conceivably reach that line, or touch it".

Defendants' witness Simpson testified that in his opinion the farm was worth $55,000.00 before the appropriation, that its value had been depreciated $5,000.00 by the taking and use of the easement and that the present value of the property was $50,000.00. In reference to the location of the easement he said, " * * * (Y)ou are taking the best part of his farm. If you was going to build a house, there is where you would build it. That's hurting the whole thing". In arriving at the figure of $5,000.00 the witness took into consideration the "beauty of the farm", the fact that the transmission line "hurt the appearance of the farm" and the "inconvenience" it caused. He attributed 40% of the $5,000.00 figure, or $2,000.00, to the element of damage to the "looks" of the property and the other 60%, or $3,000.00, to the "inconvenience" feature. Further testifying that "the unsightly power lines" affected the fair market value of the property, the witness said he had tried to sell several farms that had power lines on them, but that "out of twenty buyers there is very few people that will buy a farm with lines through the heart of it". His "personal experience" was further stated as follows: "Well, you have a client, and you drive up to a farm, and the best part of it is taken out by poles, right then he will say, he will make up his mind that you have got to drop that down, that farm down below market price. I have had them say 'Let's go on by, I don't want to buy a farm with lines on it'".

Following the testimony of defendants' witnesses Page, Cummings and Simpson, plaintiff moved the court to strike the whole of their testimony and, alternatively, to strike that portion which dealt with "looks" or "unsightliness". Additionally, at the conclusion of witness Cummings' testimony, plaintiff moved the court to strike the whole thereof or that portion dealing with "danger" or "hazard" resulting from the transmission lines. In each instance plaintiff's motion to strike was refused by the court.

Defendant William C. Cushard testified that defendants' farm had a value of $55,000.00 before the right-of-way for the easement was taken, and a value of $48,500.00 following the taking, making a total depreciation of $6,500.00.

Maurice Solomon, local manager of Osage Valley Electric Cooperative of Butler, called as a witness by defendants, testified in part as follows: "Q. Now, to be sure I understand you, Mr. Solomon, if Mr. Cushard went out to bale hay under this line, and he was stacking bales of hay, we will say, on a wagon, a truck or something, and had to drive under that line, assuming it looked like it was going to rain, he was hurrying, as a very qualified man would you say that that man might be in danger if he got within three feet of that line? A. No, I'd say he wouldn't be in any danger. * * * I would say that in a case like this, probably, on a load of hay, I'd say he would have to get up to almost touching the line before, if it was on a clear day and everything. Q. Now, I am talking about it is getting cloudy, it looks like it is going to rain, he is in a hurry to put his hay up, he has got a man, or himself, up on top of a load of hay. Let's say he has got a pitchfork in his hand. Do you mean to say he could just go up and touch that line and it wouldn't hurt him. A. No, sir, he could not. Q. He couldn't come within three feet of it, could he, Maurice, and not run the risk of getting killed on the spot? A. To be truthful, I wouldn't want to come any closer than that. Q.

You wouldn't want to come within three feet of it? A. No."

John T. McGuire and Harlow Tipton were produced as expert witnesses on Kamo's behalf. Mr. McGuire testified defendants' damages amounted to $1540.00. Mr. Tipton placed the damages at $2,000.00.

▮ Kamo's first point presents the question whether the "looks" or unsightliness of its electric power line built upon defendants' farm may be considered by the jury as a compensable element of resultant damage. Necessarily attending this inquiry are the fundamental concepts that owners of private property taken or damaged for public use are entitled to "just compensation", V.A.M.S., Const., Sec. 26, Art. 1; that the measure of their compensation will be fixed by a jury upon due and proper consideration of the effect the construction and operation of the public utility may have upon the property condemned; that resultant damages are compensable when direct and certain, and are such as may be reasonably expected to follow from the invasion of the premises by the condemnor and the consequent disturbance of the owners' dominion, as contradistinguished from such items of damage as are purely remote, speculative and conjectural in their nature, and not fairly and reasonably to be expected. Missouri Power & Light Co. v. Creed, Mo.App., 32 S.W.2d 783. In State ex rel. N.W. Elec. Power Co-op. v. Waggoner, Mo.App., 319 S.W.2d 930, this court stated that "Generally, any evidence which is competent to prove the market value of the tract of land before and after the appropriation of the easement, unless barred by some recognized rule of evidence, is pertinent and admissible". In this connection, it is pointed out by the court in Missouri Power & Light Co. v. Creed, supra, that the extent of damage occasioned by condemnation is necessarily to be established in large measure by the opinions of witnesses who show themselves to be acquainted both with the property condemned and the effect of the construction and operation of the public utility upon it.

Two distinctly divergent views are held by the courts of the various jurisdictions on whether the unsightliness of power transmission lines and appurtenances is an element of damage to be awarded when the property condemned for the power line easement consists of farm lands. Likewise, in two Missouri cases where the question was directly presented, the two courts expressed exactly opposite views, later to be noted. Kamo cites 124 A.L.R., p. 407—Eminent Domain—Power Lines, and 5 Nichols on Eminent Domain, Sec. 16.103(2), p. 59. Both of those cited sources are inconclusive in that neither undertakes to state a positive rule. They amount to little more than tabulations of decisions showing (1) that unsightliness of power lines has not been considered as a compensable element of damage to farm lands in the jurisdictions of Illinois,[1] Kansas,[2] and California[3]; (2) that a contrary view has been taken by the state courts of Ohio[4] and Texas[5] and federal courts in the jurisdictions of Tennessee[6]

1. East St. Louis Light & Power Co. v. Cohen, 333 Ill. 218, 164 N.E. 182; Illinois Power & Light Corp. v. Barnett, 338 Ill. 499, 170 N.E. 717; Central Illinois Light Co. v. Nierstheimer, 26 Ill.2d 136, 185 N.E.2d 841.

2. United Power & Light Corp. v. Murphy, 135 Kan. 100, 9 P.2d 658.

3. Sacramento and San Joaquin Drainage Dist. v. Reed, 215 Cal.App.2d 60, 29 Cal. Rptr. 847.

4. Ohio Public Service Co. v. Dehring, 34 Ohio App. 532, 172 N.E. 448.

5. Texas Power & Light Co. v. Jones, Tex. Civ.App., 293 S.W. 885.

6. Hicks v. United States, 6 Cir., 266 F.2d 515.

and Kentucky[7]; and (3) that in two Missouri cases, namely, Kamo Electric Cooperative, Inc. v. Brooks, Mo.App. (Springfield), 337 S.W.2d 444, and Union Electric Co. v. Simpson, Mo.App. (St. Louis), 371 S.W.2d 673, the respective courts have taken antithetical positions on the question.

■ On this point Kamo relies principally upon Kamo Electric Cooperative, Inc. v. Brooks, supra. There, as in the instant case, farm property was the subject of condemnation for an electric power transmission line easement. At the trial defendant Russell Brooks testified to the effect that every time he looked across "the bottom" he saw "that line there", that he didn't like the looks of the line, and that it damaged the value of "the whole farm". Cross-examination of plaintiff's witnesses by defendants as to whether the transmission line damaged the farm elicited negative answers. The trial court gave a written instruction telling the jury that in estimating their award of compensation they should not take into consideration any damage arising because the "looks" of the transmission line across the property would be detrimental to its value. On appeal the defendants challenged the instruction's propriety, relying in the main upon (1) the Ohio case, Ohio Public Service Co. v. Dehring, 34 Ohio App. 532, 172 N.E. 448, wherein the court held that unsightliness of a transmission line on a condemned easement "was a proper element for the jury to consider in determining damage to the residue"; and (2) the Texas case, Texas Power & Light Co. v. Jones, Tex.Civ.App., 293 S.W. 885, where the court ruled to the same effect. Plaintiff cited cases from the jurisdiction of Illinois ruling to the effect that unsightliness of power lines is not a compensable element of damage to land used for agricultural purposes, and the Kansas case, United Power & Light Corp. of Kansas v. Murphy, 135 Kan. 100, 9 P.2d 658, wherein it was held that "unsightliness" as

an element of damage in such instances was too remote and conjectural for consideration. Additionally, plaintiff cited the Missouri cases of State ex rel. Kansas City Power & Light Co. v. Gauld, 360 Mo. 795, 230 S.W.2d 850 and State ex rel. Northwestern Electric Power Cooperative, Inc. v. Waggoner, supra, neither of which had ruled "the issue", as the court commented. The opinion points to no Missouri court directly ruling the question before it, but directs attention to Missouri Power & Light Co. v. John Hancock Mutual Life Ins. Co., Mo.App., 58 S.W.2d 321, stating that the case "strongly infers" that the appearance of a transmission line across a farm is an element of damage too remote and conjectural to be considered in fixing the depreciation. Although the court reversed the judgment for other alleged error, it ruled that the giving of the instruction withdrawing the "unsightliness" issue from the jury's consideration was not error, using language as follows:

"It must be borne in mind that under the evidence the land to be affected in this case was not shown to be a tract of such description, adaptability and use as to make the element of 'looks' a matter of peculiar significance in its market value.

\*    \*    \*    \*    \*    \*

"Had the property across which the transmission line was constructed and to be operated and maintained been shown to be an amusement park, cemetery, campus, institutional grounds, club grounds, school or hospital lawns, garden or a beautiful estate, or the like, the element of special damage to the 'looks' by the poles and wires of the transmission line might require a particular consideration of that element of damage. The property here involved was shown to be a farm, heretofore used for agricultural purposes and presently used for pasturage. The evidence does not show that the element of 'looks' as constituting damage to the farm by the easement is

7. United States ex rel. T. V. A. v. Easement in Logan County, Ky., 6 Cir., 336 F.2d 76.

peculiar to the defendants' farm nor that such element has any special application to the uses to which the property could thereafter be applied.

\*    \*    \*    \*    \*    \*

"There are numerous decisions in other states cited by plaintiff, and others noted in further research on the question at hand, and it appears that the weight of authority supports the view that what appears to the witnesses as a detriment to the market value of a farm property because of the 'looks' of a transmission line is too uncertain, speculative and conjectural to be considered as an element of damage. Accordingly, we hold that the giving of plaintiff's Instruction No. 6 was not error."

It may be implied from the above quoted rationale of the Brooks decision that the court believed there was insufficient evidence on which the jury could base a finding that unsightliness of the power line depreciated the market value of defendants' farm property. However, the real impact of the decision is its effect in ruling *as a matter of law* that unsightliness of power lines constructed upon condemned farm lands may not be considered as an element of consequential damage in determining the owner's entitlement to compensation. As a *special* rule of evidence, its application would necessarily exclude a specific class of real property from the *general* rule that "In estimating \* \* \* the amount of depreciation in the value of the land, the owner is entitled to have the jury informed as to all those facts relating to the condition of the property which would naturally impress a person of ordinary prudence in negotiating for the purchase of the same". City of St. Louis v. Paramount Shoe Mfg. Co., 237 Mo.App. 200, 168 S.W.2d 149. Additional comment will be directed to the Brooks opinion later herein.

Defendants cite and rely upon Union Electric Co. v. Simpson, supra. As we have previously indicated, the court there ruled the instant issue contrary to the result reached in the Brooks case. Although the question raised in the Brooks case was whether evidence of unsightliness should be presented to the jury, and in the Simpson case whether argument to the jury on the basis of such evidence should be permitted, the ultimate issue in both cases was essentially the same, i. e., whether the jury should take into consideration the unsightly effect of power lines in determining market values of appropriated farm lands. During the Simpson trial defendants' counsel was permitted to argue to the jury, over plaintiff's objection, to the effect that power lines are an "unsightly thing" to look at. On appeal the plaintiff charged the trial court with error in permitting the argument on the ground (among others) that "the aesthetic considerations could not conceivably have affected the fair, reasonable market value of the defendants' real estate". In support of this position plaintiff cited 124 A.L.R., p. 413, (the annotation previously referred to) and quoted from it as follows: "The unsightliness of power transmission lines, poles, and towers has been held not to be an element of damage to be awarded for the condemnation of the necessary land and right of way for such lines, in the following cases involving farm lands". (Citing East St. Louis Light & P. Co. v. Cohen (1928), 333 Ill. 218, 164 N.E. 182; Illinois Power & L. Corp. v. Barnett (1930), 338 Ill. 499, 170 N.E. 717; United Power & L. Corp. v. Murphy (1932), 135 Kan. 100, 9 P.2d 658). Apparently rejecting the foregoing line of cases as authoritative on the question before it, the court observed as follows: "However, on this same page, the same authority states:

'However, in Ohio Pub. Serv. Co. v. Dehring (1929) 34 Ohio App. 532, 172 N.E. 448, the court said that the unsightliness of towers and transmission lines could be considered by the jury in awarding damages for a taking of farm land for a right of way for power lines, for the reason that unsightliness might affect the value of the land.

'And again, in Texas Power & L. Co. v. Jones, (1927 Tex.Civ.App.), 293 S.W. 885, it was said that if it were true, as alleged, that a power line with its poles, cross arms, wires, etc., is an unsightly object, disagreeable or repellent to sight, its presence would naturally have a tendency to affect adversely the market value of the land and that such fact could therefore be considered in determining the damages to be awarded in the condemnation proceedings' ".

Obviously adopting the view expressed by the Ohio and Texas courts, the court ruled the issue in defendants' favor as follows: "We think the jury had the right to consider any effect the power lines may have had on the market value of the property, for we believe they are entitled to take into account every element and every effect resulting from the taking and from the structures installed, which would influence an intended purchaser's estimate of the market value of the subject property".

We believe that the Simpson opinion accords with true judicial standards governing the determination of fact issues in civil jury trials and that the Brooks decision is a departure from those standards insofar as it holds that "what appears to the witnesses as a detriment to the market value of a farm property because of the 'looks' of a transmission line is too uncertain, speculative and conjectural to be considered as an element of damage". The court has thus undertaken to formulate an artificial rule of evidence that would categorize all farm lands as a special class of property having no susceptibility of damage from the cause in question, without taking into account the nature of the particular farm involved and in disregard of evidence tending to prove that the factor of unsightliness would depreciate its market value. The court based the foregoing result upon what it deemed to be "the weight of authority" after reviewing "numerous decisions in other states". Our research in this direction does not lead us to the same conclusion. In our opinion the trend of authority is presently inclined to the view that the disfigurement of farms by unsightly power lines is a compensable element of damage. See Hicks v. United States, 6 Cir., 266 F.2d 515; United States ex rel. T. V. A. v. Easement in Logan County, Ky., 6 Cir., 336 F.2d 76. However, regardless of where the weight of authority lies, our decision of this issue will rest upon what we deem to be established principles of law attending the trial of fact issues by juries.

The sole issue for the jury to decide was how much the market value of defendants' farm had been reduced by the taking and use of the easement. We have previously noted that it was defendants' entitlement as owners of the property to have the jury informed as to all facts relating to the condition of the property which would naturally impress a person of ordinary prudence in negotiating for its purchase. City of St. Louis v. Paramount Shoe Mfg. Co., supra. In this connection it is further stated by the same authority that, "The use to which the property has been devoted, and its capability or special adaptation for such use, are of course primary elements to be taken into account; and anything which is directly injurious to such capability or special adaptation for a particular use, and thereby affects the market value of the property, is therefore competent to be shown as a legitimate factor in bringing about the total damage sustained for which it is contemplated that the owner shall receive just compensation". Also see State ex rel. State Highway Commission v. Bruening, Mo.Sup., 326 S.W.2d 305; State ex rel. Highway Commission v. Malone, Mo.App., 45 S.W.2d 84; State ex rel. State Highway Commission v. Ridgway, Mo.App., 397 S.W.2d 744. Under that rule the jury in the instant case should have been permitted to consider whether unsightliness of the power line was "directly injurious" to defendants' property, and thereby affected its market value, if there

was substantial probative evidence adduced to support a finding to that effect. Under those circumstances that issue of fact would be solely for the jury to determine, without interference from the court. State ex rel. Witte Hardware Co. v. McElhinney, Mo. App., 100 S.W.2d 36. It is generally held there is sufficient evidence to warrant submission of an issue to the jury unless the facts in evidence and legitimate reasonable inferences to be drawn therefrom are so strongly against the issue submitted as to leave no room for reasonable minds to differ. Capriglione v. Southwestern Bell Telephone Co., Mo.Sup., 376 S.W.2d 205.

■■■■ Earlier herein we have reviewed in detail the testimony of three witnesses who, by reason of their experience in the sale of real estate, were qualified to speak as experts on the subject of land values, particularly as they may be depreciated by the various factors of damage which result from condemnation of farms in the area involved. Their testimony is strongly persuasive that the appearance of defendants' farm property was marred by Kamo's power transmission line and that its market value was thereby materially diminished. This evidence is amply sufficient to support the issue to which it relates. We can not rule otherwise because we are not convinced that all fair minded, honest, impartial, reasonable men would agree that no damage arose from the factor of the power line's unsightliness. Brandt v. Thompson, Mo.Sup., 252 S.W.2d 339. It is our observation of "that theoretical, reasonable, ordinary person", of which the law speaks, that his estimate of a property's value would be enhanced by its sightliness and lessened by anything that blemished it. The citizen's view of this question is expressed in United States ex rel. T. V. A. v. Easement in Logan County, Ky., supra, as follows: "The law, in its expanding nature, applies rules of damages to property, in our crowded civilization, that were not considered as necessary by the public and the courts in days before invasion of privacy was thought to warrant damages, or child

labor, to be a matter in which the public interest was involved. Noise, crowded conditions, and injury to aesthetic value of property, have found remedies in injunctive relief, zoning laws, and damages; and, at the present time, citizens are becoming more concerned than ever before in our history with these assaults upon health, quiet, and the beauty of farms, homes, communities, and the American countryside". The trial court's rulings complained of in defendants' first point were not erroneous.

The next question presented is whether the jury should have been permitted to consider the potential of "danger or hazard" created by the power line in determining the amount of their award. Kamo insists that the trial court erred in receiving and refusing to strike the testimony of witness Cummings that he had taken into consideration the element of danger in arriving at his estimate of damage, and also in refusing to give Instruction No. 7 which told the jury that in arriving at their verdict they should not take into consideration damage which may arise from any danger or hazard that may have been created by the electric line. It is essentially Kamo's argument that the fear of danger referred to by the witness was an unreasonable and unfounded one, and it should not have been considered by the jury. Defendants counter with argument that there is nothing speculative, remote or uncertain about the danger to a person in close proximity to the high voltage line, and that it would not be unusual for a person working in hay harvest on defendants' farm to be in such a position.

The leading and most frequently cited Missouri case bearing on the question is Missouri Power & Light Co. v. Creed, supra. There, as in this case, the plaintiff utility appropriated a power line easement over a farm. The defendant owners asserted as an item affecting their entitlement to damages (among others) the possibility that the transmission line might break and come in contact with persons or stock and

cause injury. Preliminarily the court acknowledged that "if there are risks and hazards which are special and peculiar to the land, and of a nature to be different from the damage which is incidental to any land over which the line might pass, evidence of such matters will be competent, such facts in the assessment of damages, and the jury will be permitted to consider not upon the theory that a recovery is being thereby allowed for speculative risks and contingencies which may never happen, but instead upon the theory that such matters in the nature of special damages affect the present market value of the land in the light of the use to which it may be put". Commenting that defendants undoubtedly tried the case on that theory but that instead of confining their evidence within the limits of the rule they had introduced evidence "which invaded the realm of speculation, surmise and conjecture", the court ruled that the possibility of damage arising from the breaking of power lines was too "conjectural and foreign to the field of legitimate inquiry" to be considered as an element of defendants' damages, and that "the witnesses should not have been permitted to testify that such possibility was a source of damage to be considered, since their testimony on the record before us must have been founded purely upon a fear of electricity, rather than upon a consequence reasonably to be apprehended". This ruling was adopted as the basis of decisions in State ex rel. Kansas City Power & Light Co. v. Gauld, 360 Mo. 795, 230 S. W.2d 850, and Missouri Power & Light Co. v. John Hancock Mutual Life Ins. Co., Mo. App., 58 S.W.2d 321, where the respective courts held that testimony that electric wires might break and become dangerous was purely speculative when the testimony showed that automatic circuit breakers would cut off the current if the wires broke. And, in Arkansas Missouri Power Co. v. Killian, 225 Mo.App. 454, 40 S.W.2d 730, evidence tending to show that wires on a transmission line carried a heavy voltage of electricity and that such voltage was dangerous to handle was held to be inadmissible. The court there said, "There was no evidence that the owner of this land would ever be required to handle this wire or that it was likely to break and fall, or, if it did, that the landowner would, at that particular time, be where he could be injured or that his live stock could be injured. That would be speculating on the possibilities of the future which cannot reasonably be expected to occur".

In Kamo Electric Cooperative v. Dicke, Mo.App., 296 S.W.2d 905, decided by this court, defendant landowners contended that a power transmission line constructed on their farm by plaintiff utility constituted a special risk or hazard because there was danger that a fly line thrown by a person "fly fishing" in lakes located on the farm might come in contact with the high voltage power lines. It was urged by defendants that such "risk" or "hazard" should be considered by the jury as having a bearing on their determination of the "present" market value of the property. In considering the question we said:

"Speculative or remote elements of such damages are not to be considered. Missouri Power & Light Co. v. Creed, supra. It was said in Orgel on Valuation under Eminent Domain, Vol. 1, Section 61, page 280: 'Electricity is an element of great potential danger, in the control and use of which great care is necessary, and it may be that persons having no actual knowledge of the practical operation and effect of such lines heavily charged with electricity may fear the dangers which they imagine exist because of the location of the line on the property in question. If this is so, and by reason of such fear the persons affected are not willing to buy the lands on which the line is constructed, the law cannot regard the depreciation created by such a cause as resting upon any substantial basis and cannot allow any compensation on account of any claimed depreciation which is due to mere fear founded in reality upon lack of knowledge and not justified by the facts' ".

It was our conclusion that the claimed element of risk or hazard in the use of fishing lakes was too conjectural, speculative and remote to be considered as a factor materially affecting the market value of the farm. We ruled specifically (1) that the trial court committed prejudicial error by giving an instruction which permitted the jury to consider the claimed special risk and hazard in assessing defendants' damages, and (2) that the trial court likewise erred in refusing to give an instruction withdrawing the element of risk and hazard from the jury's consideration. For those errors the judgment was reversed and the cause remanded.

Supplementing Missouri decisions involving the instant issue, we additionally note general rules we consider pertinent thereto. The burden of proof in condemnation proceedings is on the landowner to show the extent of his damages, 11A Mo. D., Eminent Domain, ☜ 200. The general rules of evidence in civil actions are applicable in determining the submissibility of issues in the trial of condemnation proceedings. State v. Vorhof-Duenke Co., Mo.Sup., 366 S.W.2d 329. An issue of cause and effect is not submissible on behalf of a party who has the burden of proof on that issue where the evidence establishes no more than "an assurance of possibility". Kimme v. Terminal R.R. Ass'n of St. Louis, 334 Mo. 596, 66 S.W. 2d 561; also see O'Leary v. Scullin Steel Co., 303 Mo. 363, 260 S.W. 55, and cases digested in 27 Mo. D., Trial, ☜139(1) (g). The United States Supreme Court has particularized that rule as it applies to elements affecting the market value of land taken for public use. In Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236, the court said: "Elements affecting value that depend on events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable, should be excluded from consideration for that would be to allow mere speculation and conjecture

to become a guide for the ascertation of value—a thing to be condemned * * * in judicial ascertainment of truth".

Taking into consideration Missouri case law on the issue before us and general rules that are applicable to the inquiry, it now appears that our problem is no more complex than to present the simple question: Has the evidence established that there is a *reasonable probability* of danger from the power line to persons working in its vicinity—or does it show that the existence of such a danger is a mere *possibility*? The testimony of two witnesses produced by defendants bears fragmentarily on this question. The testimony of Glenn Cummings in its entirety, as it relates to the subject of danger, consists of two answers, which we here requote in full:

"and (there was) also *possibly* some danger from people being on a load of hay and so forth up close to the line and *possibly* touching it".

\*       \*       \*       \*       \*       \*

"Well, there would be a danger involved here if he sold this hay, or loaded it in the field on trucks which would go seven or eight bales high and then a man standing on that loaded truck could *conceivably* reach that line, or touch it". (Emphasis supplied.)

The testimony of Maurice Solomon in essential substance was to the effect only that on a clear day a man on a load of baled hay driven under the power lines would have to "get up to almost touching the line" to be in danger; that when the atmosphere is damp electric current will "arc" or "jump" farther than when it is dry; and that he personally (the witness) wouldn't want to come "within three feet of it". We regard the testimony of Solomon as having no greater force than that of Cummings who testified only that there was danger that some one might "possibly" or "conceivably" come in contact with the power line and suffer injury. Of course, it

**658**

is possible that some one might load a truck or wagon so high with hay that if he stood on top of the hay he might come in contact with the power line. But, does this possibility establish a reasonable probability as required by Olson v. United States, supra, or an "assurance of possibility" as required by Kimme v. Terminal R. R. Ass'n, supra, that any one would do anything so reckless and foolhardy? We think not. There is no claim that the power line is not in plain view and it is the common knowledge of all that 69,000 volts of electricity can be lethal if one comes in contact with it. We hold that the testimony of Cummings and Solomon presents only an imaginary possibility and therefore it is only conjecture and speculation which cannot legitimately be taken into account in assessing the defendants' damages.

Consequently we rule that the trial court committed prejudicial error in permitting the jury to consider the element of danger or hazard in assessing defendants' damages and in refusing Instruction No. 7 withdrawing that element from the jury's consideration.

In a third point plaintiff complains that the trial court erred in failing to instruct the jury on the burden of proof. It is a fact, disclosed by the record, that the trial court omitted to give a burden of proof instruction. The record additionally shows that the plaintiff did not request such an instruction, and made no point of the court's omission to instruct the jury in the motion for new trial. The question has been raised for the first time in plaintiff's brief. The point will not be decided, however, in view of the necessity for retrial of the case because of the prejudicial error above noted.

The judgment is reversed and the cause is remanded.

HOWARD, P. J., BLAIR, J., and J. MORGAN DONELSON, Special Judge, concur.